**Stephen Michael EBERLE, a minor, by his parents and natural guardians, William and Gloria Eberle, and William and Gloria Eberle, in their own right, Plaintiffs,**

v.

**The BOARD OF PUBLIC EDUCATION OF the SCHOOL DISTRICT OF PITTSBURGH, PENNSYLVANIA, Defendant.**

**Civ. A. No. 77–1147.**

United States District Court, D. Pennsylvania.

Oct. 26, 1977.

Joseph M. Ludwig, Pittsburgh, Pa., for plaintiffs.

Justin M. Johnson, Sol., Persifor S. Oliver, Jr., Asst. Sol., Bd. of Ed. of the School

Dist. of Pittsburgh, Pittsburgh, Pa., for defendant.

## MEMORANDUM

McCUNE, District Judge.

Stephen Eberle is a seven year old child with profound hearing loss. This action is brought by Stephen and his parents for review of the placement of Stephen in a special education class for the hearing impaired in the Pittsburgh Public School System. Jurisdiction is alleged under Title VI, Section 615 of the Education for All Handicapped Children Act, 20 U.S.C. § 1415.

Defendant, the Board of Public Education of the School District of Pittsburgh, Pennsylvania (School Board), has moved to dismiss this action on the basis of res judicata, their interpretation of § 615, and the impropriety of retroactive application of this act. We find the retroactivity argument meritorious, and dismiss for lack of jurisdiction. We do not reach the other arguments.

### I

The parties stipulate that Stephen is a child of above average intelligence and is affected by profound hearing loss. The complaint indicates that as a result of his condition, Stephen has required special instruction from an early age to enable him to gain skills necessary for his optimal development. The School District has not, until recently, offered this instruction. Consequently, Stephen has been attending classes at the Western Pennsylvania School for the Deaf (WPSD), a private institution, at the School District's expense. Stephen has been attending the WPSD since 1973.

Commencing with or sometime prior to the 1976–77 school year, the School District instituted its own program for hearing impaired children at the Beechwood School (Beechwood). The Beechwood program utilizes a method known as the "total communications program." This method is the predominant method of training deaf children in the United States, and there is no indication of inadequacy of the Beechwood program. This program centers around the use of hand signs as a means of communication.

The Beechwood program differs from the WPSD program. The WPSD program, known as the "verbotonal program," appears to be centered around the development of the child's residual hearing ability. This method is relatively new to this country. WPSD is one of the very few verbotonal schools in the United States.

With the institution of the Beechwood program, the School District began to transfer children to whom the program was thought to be appropriate from the WPSD to Beechwood. Stephen was one of the students transferred. Because Stephen had already undergone four years of verbotonal training, his parents feared that gains which Stephen had made would be lost and further gains impaired by placement in a total communications program. As a result, they oppose his transfer.

Pursuant to the regulations of the Secretary of Education of the Commonwealth of Pennsylvania, a due process hearing was held regarding this transfer on October 18, 1976. On November 5, 1976, the hearing officer submitted a decision approving the transfer. Exceptions were timely filed with the Secretary of Education. The Secretary took no action during the 1976–77 school year, and Stephen was permitted to continue at the WPSD for that term. At the completion of the term, the Eberles were informed that the School District intended to transfer Stephen to Beechwood at the beginning of the 1977–78 term. A second due process hearing was demanded, presumably due to changed circumstances, or the yearly right of hearing provided for in the Secretary's regulations. No hearing was granted. On September 8, 1977, the Secretary of Education affirmed the determination of the hearing officer as submitted on November 5, 1976. It is that decision which caused this action to be brought here.

The Eberles allege jurisdiction in this court over this action based on the

Education for All Handicapped Children Act. The Education of Handicapped Children Act does contain a jurisdictional grant. However, the main purpose of the Act is the funding of special schools for the handicapped. The jurisdictional grant is one of a number of procedural safeguards attendant to the Act, insuring the equitable and efficient use of the funds by the states. Upon acceptance of federal funds, the states are required to set up certain procedures for review of administrative decisions concerning the assignment of students. These review procedures are then to be brought to this court (or a state court of competent jurisdiction) for review. The effective date of these provisions is October 1, 1977. 20 U.S.C. § 1411. The question before us is whether this court has jurisdiction over an action which has proceeded through state review prior to the effective date of the Act. The complaint in this court was filed subsequent to the effective date of the Act. To determine whether the act should be retrospectively applied, it is necessary to examine the Act in light of the allegations of the complaint.

The due process procedure to be set up by the states and our jurisdictional grant are included in Title VI, § 615 of the Act. Section 615 is a somewhat detailed provision. Only a small portion of § 615 is relevant to our jurisdiction, however. Subsection (e)(1) provides:

"A decision made in a hearing conducted pursuant to paragraph (2) of subsection (b) shall be final, except that any party involved in such hearing may appeal such decision under the provisions of subsection (c) and paragraph (2) of this subsection. . . .

(2) Any party aggrieved by the findings and decision made under subsection (b) of this section who does not have the right to an appeal under subsection (c) of this section, and any party aggrieved by the findings and decision under subsection (c) of this section, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."

Subsection (e)(1) cannot be fully understood without reference to paragraph (2) of subsection (b):

"(2) Whenever a complaint has been received under paragraph (1) of this subsection, the parents or guardian shall have an opportunity for an impartial due process hearing which shall be conducted by the State education agency or by the local educational agency or intermediate educational unit, as determined by State law or by the State educational agency. No hearing conducted pursuant to the requirements of this paragraph shall be conducted by an employee of such agency or unit involved in the education or care of the child."

Subsection (c) is also referred to in Subsection (e)(1); that subsection merely refers to an optional appeal procedure, allowing appeal to the Secretary of Education prior to the review of the determination by an appropriate court.

These subsections provide the basic structure for the establishment of a review procedure by the states. More elaborate due process guarantees may be instituted by individual states. At a minimum, however, a parent must be given notice of the assignment of his child to a special program; he must be given a right to a hearing on that assignment; and he is allowed an appeal to this court or an appropriate state court. This procedure must be available to parents if a state accepts funds from the federal government for handicapped children's education.

The question of whether Pennsylvania due process procedures conform to the requirements of the Education of Handi-

capped Children Act is not before this court. The existence of these procedures is, however, significant. If they were instituted prior to the effective date of § 615 and were instituted pursuant to § 615, then it would be apparent the Secretary of Education expected § 615 to have retrospective effect.

Our research shows that the Pennsylvania procedures which have been followed by the litigants in this action are not procedures instituted as a result of § 615. These procedures were established pursuant to a consent decree entered into by the Commonwealth on October 8, 1971. *Pennsylvania Association for Retarded Children v. Pennsylvania,* 334 F.Supp. 1257 (E.D.Pa. 1971). Interestingly, this decree was in part, the motivation § 615. See 2 U.S.Code Cong. & Admin.News, p. 1430 (1975). Since both the Pennsylvania procedures and § 615 are motivated by the *Pennsylvania Association for Retarded Children* consent decree, it is impossible to determine when the Secretary of Education believed that § 615 required the due process procedures.

It is, of course, the intent of Congress and not the Secretary of Education which controls our decision here. That intent is made clear by both the form and legislative history of § 615.

Section 615 is attached to a funding act. It is logical to conclude that Congress intended the scope of § 615 to be coextensive with the Education of Handicapped Children Act itself. Since the power base of the act is the funding of state programs, § 615 cannot become binding on the states prior to the funding to which it is attached. The due process procedures were only a condition of funds received after October 1, 1977. The due process procedure prior to that date were not procedures pursuant to § 615. Since our jurisdiction is over complaints made "pursuant to" § 615, we have no jurisdiction over this action.

The legislative history of § 615 supports this interpretation. In the Joint Explanatory Statement of the Committee of Conference, it is noted that "[a]ll of the procedural safeguards [§ 615] are established as a con-

dition of a state's eligibility to receive funds under this part." 2 U.S.Code Cong. & Admin.News, pp. 1480, 1501 (1975). The safeguards are not intended as independent of funding, but are imposed as a condition of funding. As a result, these conditions cannot be imposed prior to funding made conditional upon them. They should not be retrospectively applied.

The practical effect of this decision may be somewhat temporary. Our reading of the Secretary's regulations leads us to believe that Stephen would be entitled to a second due process hearing based upon the decision to transfer him for the school year 1977–78. Whether the result of that hearing, occurring after October 1, 1977, but based on a decision made prior to October 1, 1977, furnishes the basis for an appeal to this court of which we would have jurisdiction, is not now decided. Whether the doctrine of res judicata applies to the second proceeding is not decided. The Secretary's regulations appear to entitle parents to a hearing each year. It is thus apparent that there may be multiple hearings related to the same subject.

Whether there should be modifications of the regulations and whether they should be promulgated pursuant to § 615, is left to the Secretary.