Kenneth LOUGHRAN, John Loughran
and Eleanor Loughran

v.

C. Glenn FLANDERS, Jr., Mary B. Jackson, Bernard J. Casey, Jr., Malcolm K. Hamilton and Lewis P. McGee.

Civ. A. No. H77–649.

United States District Court,
D. Connecticut.

April 18, 1979.

Igor I. Sikorsky, Jr., Hartford, Conn., for plaintiffs.

H. Bissell Carey, III, Robinson, Robinson & Cole, Hartford, Conn., for defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS

CLARIE, Chief Judge.

The plaintiff is a fifteen year old learning disabled minor, who is presently a student in the Windsor Locks public school system. This complaint was filed pursuant to the provisions of 20 U.S.C. § 1401 *et seq.* (Education for All Handicapped Children Act of 1975) seeking a court order requiring the Windsor Locks school board members, who are being sued both individually and in their representative capacity, to implement an individualized course of instruction designed to meet this student's educational needs. In addition, the complaint also seeks one million dollars in monetary damages for the alleged negligence of the defendants in failing to implement an appropriate educational program earlier in the plaintiff's school career.

Since this complaint was filed the parties have agreed upon an educational program for Kenneth thus mooting that portion of the complaint seeking affirmative equitable relief.

The defendants have moved to dismiss the complaint *inter alia* on the grounds that (1) the provisions of the Education for All Handicapped Children Act of 1975, 20 U.S.C. § 1401 *et seq.* does not contain a private damage remedy, (2) the plaintiff has failed to exhaust state remedies, and (3) the claim for damages is barred by the Eleventh Amendment and/or governmental immunity.

The Court finds that the provisions of the Education for All Handicapped Children Act of 1975 do not contain an implied cause of action for damages. Accordingly, that portion of the defendants' motion seeking a dismissal of the damage claim is granted.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to the grant of authority found in 20 U.S.C. § 1415(e)(4).

### Facts

The plaintiff, Kenneth Loughran, is a fifteen year old minor who resides with his parents in the Town of Windsor Locks. A life long resident of the town, he has been enrolled in the Windsor Locks school system since 1970. The complaint alleges that since 1971, the year he entered first grade, it has been apparent that Kenneth has suffered from educational disabilities, which greatly impair his reading and writing skills.

The plaintiff's difficulties were first formally recognized by the defendants in October of 1974 when an educational re-evaluation disclosed that Kenneth was in fact learning disabled. It is the assertion of the plaintiff that this reevaluation was deficient in that it failed to fully identify the extent of the problem. The complaint also alleges that the education, which Kenneth has subsequently received, has been inadequate due to a lack of educational resources within the Windsor Locks school system.

The essence of Kenneth's claim is that through their negligence, the defendants have breached a duty under both state and federal law to provide him with a free and appropriate public education.[1] This breach of duty allegedly arises from the defendants' failure to properly diagnose and take effective steps toward remedying his learning disabilities.

Apart from affirmative educational relief, the complaint also seeks one million dollars in damages to compensate both Kenneth and his parents for the emotional trauma suffered by them as a result of the defendants' conduct. The complaint alleges that the defendants' negligence has made it virtually impossible for Kenneth to function at his full intellectual capacity and to thus reap those personal, social and financial rewards which are commensurate with his intelligence.

The defendants have moved to dismiss the complaint, *inter alia,* on the grounds that the plaintiff (1) is impermissibly attempting to formulate a private cause of action out of the provisions of the Aid to All Handicapped Children Act of 1975, (2) has failed to exhaust his available state remedies, (3) is asserting claims predating either in whole or in part the effective date of the federal legislation, and (4) is barred from seeking money damages by the Eleventh Amendment and/or common law immunity.

### Discussion of Law

The jurisdictional provisions of the Aid to All Handicapped Children Act of 1975 require a litigant to first exhaust his available state remedies before bringing an action in federal court. 20 U.S.C. § 1415(e). However it is axiomatic that exhaustion is never required where resort to the state procedure would be futile. *Eisen v. Eastman,* 421 F.2d 560, 569 (2d Cir. 1969), *cert. den.,* 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970); *Percy v. Brennan,* 384 F.Supp. 800 (S.D.N.Y.1974). The state procedure in this instance is designed only to handle parental challenges to the evaluation and/or placement of a child suffering from learning

---

1. Specifically, the plaintiff bases his alleged right to special education upon the provisions of 20 U.S.C. § 1401 *et seq.* and Conn.Gen.Stat. § 10–76a *et seq.*

disabilities. *See,* Conn.Gen.Stat. § 10–76h. To require exhaustion in this case would be futile, since the state procedure has no relevance to the question of whether there is a private remedy for damages implicit in the provisions of 20 U.S.C. § 1401 *et seq.* Accordingly, the Court finds that the plaintiff may bring this claim for damages without first resorting to the prescribed state procedure.

The thrust of the plaintiff's action .for damages is the assertion that the defendants' negligence, in failing to both diagnose and remedy his learning disabilities deprived him of a federal statutory right to special education. He bases this claimed right to special education not only upon the current law, but also upon its statutory predecessors. *See,* Pub.L. 94–142 *et seq.,* Pub.L. 93–380 *et seq.,* and Pub.L. 91–230 *et seq.*

Current law on the subject is found in the provisions of the Education for All Handicapped Children Act of 1975, 20 U.S.C. § 1401 *et seq.* The chief function of the Act is to serve as a funding vehicle for the states in their efforts to provide educational opportunities for the handicapped. *Eberle v. Board of Public Ed. of Sch. Dist. Etc.,* 444 F.Supp. 41, 43 (D.Penn.1977), aff'd, 582 F.2d 1274 (3d Cir. 1978). One of the prerequisites to receiving federal funds is that each participating state establish a review procedure whereby the parent/guardian of the handicapped child may dispute the educational .evaluation and/or placement of his child within the local school system. 20 U.S.C. § 1415. Specifically, after a complaint regarding a child's placement is made, the state must provide the parent/guardian with an impartial due process hearing on the issue. 14 U.S.C. § 1415(b)(2). If following this hearing the parent/guardian is still aggrieved, he may bring his complaint to a federal district court or state court of competent jurisdiction. 20 U.S.C. § 1415(e)(2). This is a limited grant of jurisdiction however since it only authorizes review of claims alleging (1) errors in the evaluation or placement of the handicapped student, or (2) a denial of the Act's numerous procedural safeguards. *See,* 20 U.S.C. § 1415(e)(2); *Stuart v. Nappi,* 443 F.Supp. 1235 (D.Conn. 1978).

Thus the issue presented is whether or not one can read into the provisions of the Education for All Handicapped Children Act of 1975 and its statutory predecessors an implied private remedy for damages.

The standard for determining whether a private damage remedy is implicit in a statute not expressly providing for one is best enunciated in the Supreme Court case of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The decision noted that there were four relevant factors in such a determination: (1) whether the plaintiff is one of a class for whose especial benefit the statute was enacted, (2) whether there is any 'legislative intent either explicit or implicit to create or deny such a remedy, (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy, (4) whether the cause of action is one traditionally relegated to state law in an area basically the concern of the states so that it would be inappropriate to infer a cause of action based solely on federal law. *Id.* at 76, 95 S.Ct. 2080, *see also, Palmer v. Thomson & McKinnon Auchincloss, Inc.,* 427 F.Supp. 915 (D.Conn.1977).

The first inquiry must be to determine whether the plaintiff is one of the class for whose special benefit the legislation was enacted. *Cort v. Ash,·supra,* 422 U.S. at 80, 95 S.Ct. 2080. Since this is a motion to dismiss, the Court must accept as true all well pleaded allegations in the complaint. *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). It appears undisputed that the plaintiff is suffering from some type of learning disability. An examination of both the language and history of the Education for All Handicapped Children Act of 1975 suggests that it was enacted specifically to benefit individuals such as Kenneth. Thus, the plaintiff has successfully satisfied the first requirement of the *Cort* standard.

The second prong of the *Cort* standard presents a more formidable barrier to the plaintiff's claim. The Court is required to examine the legislative history of 20 U.S.C. § 1401 *et seq.* to determine if it suggests any intent on the part of Congress to allow a private cause of action for damages. The plaintiff has based his claim upon the provisions of three federal acts, namely, Pub.L. 91–230, Pub.L. 93–380, and Pub.L. 94–142, which when taken chronologically effectively defined all federal involvement in the field of special education since the plaintiff began his schooling.

The first piece of legislation, Pub.L. 91–230 is popularly known as the Elementary and Secondary Education Act of 1970. In Title VI of that bill, Congress created as an independent law the Education of the Handicapped Act, which consolidated all programs of education for the handicapped into a single statute. The purpose of the Act was threefold, (1) to financially assist the states in initiating, expanding, and improving special education programs, (2) to create the Bureau of Education for the Handicapped to provide a central agency to administer these various programs, (3) to establish a National Advisory Council on Handicapped Children to advise both the Commissioner of Education and Congress on the educational needs of the handicapped.[2]

The plaintiff also asserts that his claim derives from the provisions of Pub.L. 93–380, an Act known as the Education of the Handicapped Amendments of 1974. Apart from extending the provisions of the Education of the Handicapped Act for three more years, the bill was designed to ". . . assist [the] states through non-matching formula grants to initiate, expand and improve preschool, elementary and secondary education and related services to handicapped children."[3] The bill contained increased funding provisions due to the Congressional realization that escalating costs had placed an increased responsibility upon the federal government to share with the states the financial burden of providing these educational programs.[4]

Current federal policy on the issue of special education is articulated in the provisions of the Education for All Handicapped Children Act of 1975, 20 U.S.C. § 1401 *et seq.* This legislation was designed,

". . . to assure that all handicapped children have available to them, within the time period specified in section 612(2)(B) of the Act a free appropriate public education, which emphasizes special education and related services designed to meet their unique needs." Senate Conference Report No. 94–455, 1975 U.S.Code Cong. & Admin.News, pp. 1425, 1482.[5]

There is a common theme contained within the legislative history of these Acts through which the plaintiff traces his alleged cause of action. Each demonstrates a Congressional attempt to improve the educational opportunities afforded the estimated four million handicapped students who, due to the limited financial and educational resources of the states, were not receiving an adequate education.[6] The Acts sought to mitigate this problem by providing funds to expand and improve the educational resources of the several states.

The legislative histories of these Acts share a second common trait; each is devoid of even the slightest suggestion that Congress intended for it to serve as a vehicle through which to initiate a private cause of action for damages.

2. Senate Report No. 91–634, 1970 U.S.Code Cong. & Admin.News, pp. 2768, at 2832.

3. House Report No. 93–805, 1974 U.S.Code Cong. & Admin.News, pp. 4093, at 4139.

4. *Id.* at p. 4138.

5. Section 612(2)(B) requires *inter alia* a State to provide a free appropriate public education for all handicapped children between the ages of three and eighteen no later than September 1, 1978, and for all handicapped children between the ages of three and twenty-one within the State not later than September 1, 1980.

6. Senate Report No. 94–168, 1975 U.S.Code Cong. & Admin.News, pp. 1425, at 1432.

The third prong of the *Cort* standard is the requirement that the asserted cause of action be consistent with the legislative scheme of the statute from which it is derived. *Cort v. Ash, supra,* 422 U.S., at 78, 95 S.Ct. 2080. The thrust of federal legislation in the field of special education has been to provide financial assistance to the states, in their effort to provide each one of their handicapped children with an appropriate education. Recognition of a private remedy for damages, as alleged in this instance, would compel these programs to shift their focus. Insulation of school officials from liability would take precedence over the implementation of innovative educational reforms. Recognition of the plaintiff's claim would cause special education programs to suffer, since administrators would balk at implementing new curricula and techniques for fear of exposing themselves to liability should these innovations fail.

Federal legislation in the field of special education is designed to serve two functions, (1) to assist the states in providing an appropriate educational opportunity for each handicapped child and (2) to serve as a catalyst by encouraging innovation and research in the field of special education.[7] Allowing the provisions of 20 U.S.C. § 1401 *et seq.* to serve as a basis for a private cause of action for damages would prevent the statute from ever fulfilling its catalytic function.

A final factor to be considered is whether the purported cause of action is one traditionally relegated to state law, in an area basically the concern of the states. *Cort v. Ash, supra* at 78, 95 S.Ct. 2080. The plaintiff is essentially alleging that he is the victim of educational malpractice. The few reported cases on this type of claim have all arisen in a state forum. *See, e. g. Donohue v. Copiague U. Free Sch. Dist.,* 64 A.D.2d 29, 407 N.Y.S.2d 874 (1978) (held: no cause of action); *Peter W. v. San Francisco Uni-fied Sch. Dist.,* 60 Cal.App.3d 814, 131 Cal. Rptr. 854 (1976) (held: no cause of action); *Hoffman v. Board of Ed. of City of N. Y.,* 64 A.D.2d 369, 410 N.Y.2d 99 (1978) (held: cause of action for misfeasance on part of school officials in failure to follow therapeutic timetable established by school psychologist).

The plaintiff has not cited nor can this Court find any federal case which has recognized this type of action. The claim for damages necessarily hinges upon questions of methodology and educational priorities, issues not appropriate for resolution by this Court, since they present a ". . . myriad of 'intractable economic, social, and even philosophical problems.'" *San Antonio School Dist. v. Rodriguez,* 411 U.S. 1, 42, 93 S.Ct. 1278, 1301, 36 L.Ed.2d 16 (1972), *quoting from, Dandridge v. Williams,* 397 U.S. 471, 487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

### Conclusion

To recognize the plaintiff's alleged cause of action for monetary damages would be contrary to both the history and purpose of the Education for All Handicapped Children Act of 1975 and its statutory predecessors. Accordingly, the defendants' motion to dismiss is granted.[8]

SO ORDERED.

---

7. House Report No. 93–805, 1974 U.S.Code Cong. & Admin.News, pp. 4093, at 4139.

8. Since the opinion holds that the plaintiff has failed to state a claim upon which relief can be granted, the Court has refrained from addressing the issue of whether the claim for damages is also barred by the Eleventh Amendment and/or common law immunity.