Raymond **FRANKEL** and Marjorie Frankel, **Individually and as parents of Andrew Frankel, Plaintiffs,**

v.

**COMMISSIONER OF EDUCATION, State of New York and Board of Education Mamaroneck Union Free School District, Defendants.**

No. 78 Civ. 2482 (CES).

United States District Court,
S. D. New York.

Nov. 8, 1979.

Blum, Haimoff, Gersen, Lipson, Slavin & Szabad, New York City, for plaintiff; Joseph G. Blum and Ronald B. Kremnitzer, New York City, of counsel.

Kramer, Lowenstein, Nessen, Kamin & Soll, New York City, for defendant Bd. of Ed.

Robert D. Stone, Counsel and Deputy Com'r for Legal Affairs, Albany, N. Y., for defendant Com'r of Ed.; Carol M. Hoffman, Albany, N. Y., of counsel.

## MEMORANDUM DECISION

STEWART, District Judge:

Plaintiffs, parents of a handicapped child, claim that the Commissioner of Education, State of New York ("the Board") failed to timely and properly classify their son Andrew as handicapped and to provide him with appropriate education, as required by the Education for All Handicapped Children Act of 1975 ("the Act") and New York Education Law § 4401 et seq. (McKinney). They seek review of the Commissioner's denial of tuition costs necessarily expended by them for Andrew's education, basing subject matter jurisdiction on 20 U.S.C. § 1415 (1975). Defendants have moved to dismiss, arguing that the Act should not be applied retroactively to plaintiffs' claim and that the plaintiffs have failed to state a claim upon which relief can be granted. For reasons discussed below, defendants' motion is denied.

The facts as presented in the pleadings are as follows:[1] Plaintiffs' son Andrew suffers from an emotional disturbance first observable when he was in third grade, which eventually became serious enough to warrant his identification and placement as a handicapped child. During the 1975–76 school year, Andrew was enrolled in the tenth grade at the Mamaroneck Free School District. His behavior deteriorated steadily. For the last quarter of the academic year he did not attend classes at all, but was nevertheless permitted by the administration of the high school to qualify for his final examinations.

The plaintiffs concluded that the School Board was not providing their son with an

---

1. For the purposes of a motion to dismiss the complaint, the material allegations of the complaint are taken as admitted, see George C. *Frey Ready Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551 (2d Cir. 1977).

adequate educational program. They consulted various psychiatrists and school authorities, and decided that it was necessary to enroll Andrew at the Grove School, a private residential out-of-state school, at their own expense.

Plaintiffs then petitioned the Committee for the Handicapped, a committee established by the Board of Education to identify, review, evaluate and place handicapped children, as required by N.Y. Ed. Law § 4402, for reimbursement of the costs incurred in educating their son. They claimed that the School Board had failed to properly and timely identify Andrew as a handicapped child as required by Regulations of the Commissioner of Education (New York), revised effective November 1, 1976, Part 200, subchapter P. On September 30, 1976, the Committee found Andrew to be handicapped and in need of a special program, but recommended denial of the request for reimbursement and placement of Andrew in a special education program operated in the public high school. Plaintiffs requested a hearing to review these findings, pursuant to the review procedures set forth in the New York Education Law and Regulations, Part 200. Hearings were held before a Hearing Officer, who reported to the Committee on May 2, 1977 that Andrew had been offered a suitable education program for the 1976–77 school year, but recommended that the Mamaroneck school district reimburse plaintiffs for the cost of tuition at the Grove School and that a separate psychiatric evaluation of Andrew be obtained. The Committee reported to the Board of Education, recommending the denial of reimbursement of tuition costs. On July 12, 1977, the Board issued a determination accepting the recommendation to deny

reimbursement. The plaintiffs appealed this decision to the Commissioner on August 12, 1977, and the Commissioner dismissed the appeal on February 1, 1978.

During the pendency of plaintiffs' appeal to the Commissioner, the Committee determined that for the 1977–78 school year, Andrew should be placed at the Grove School. Plaintiffs then. submitted a petition to reopen to the Commissioner on March 2, 1978, which was denied on June 8, 1978. Plaintiffs then filed this action on May 31, 1978 based on the Education for All Handicapped Children Act, 20 U.S.C. § 1401 *et seq.* (1975). This statute provides funds to states to assist them in providing free appropriate education to all handicapped children. The Act requires states to assure that all children residing in the state who are handicapped are identified, located and evaluated. 20 U.S.C. § 1412(2)(C), and that any state receiving assistance under the Act establish and maintain procedures to assure that handicapped children and their parents are guaranteed procedural safeguards. 20 U.S.C. § 1415.

Defendants contend that the Act, which became effective October 1, 1977, was not in effect at the time plaintiffs' claim arose, that it should not be applied retroactively to plaintiffs' claim, and that plaintiffs had asserted no other basis for subject matter jurisdiction.[2] They conclude that the Court lacks subject matter jurisdiction and the case should be dismissed.

■ Plaintiffs' claim was initially filed with the Department of Education in 1976. It was under consideration on appeal to the Commissioner at the time the Act became effective. The issue before us is whether the Act should be applied to claims that

2. The section on which plaintiffs rely to establish subject matter jurisdiction provides:

> (2) Any party aggrieved by the findings and decision made under subsection (b) of this section who does not have the right to an appeal under subsection (c) of this section, and any party aggrieved by the findings and decision under subsection (c) of this section, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be

brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(e)(2).

arose prior to its effective date but were awaiting final agency action at that time. *Cf. Brown v. General Services Administration,* 507 F.2d 1300 (2d Cir. 1974). Although the question of the retroactive application of the Act has not been decided in this Circuit, in other contexts the Court of Appeals has applied the standard set forth by the Supreme Court in *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1973). *See Beazer v. N. Y. Transit Authority,* 558 F.2d 97 (2d Cir. 1977); *Brown v. General Services Administration, supra.* In *Bradley,* the Supreme Court held that a court should "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." 416 U.S. at 711, 94 S.Ct. at 2016. The statute and legislative history are silent on the question of retroactivity of the Act. As in *Bradley,* we must determine whether retroactive application would work an injustice in light of "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." *Id.* at 717, 94 S.Ct. at 2019.

In this case the defendants are the Commissioner and Board of Education and plaintiffs are the parents of a handicapped child. This case is "of a kind different from 'mere private cases between individuals'. With the Board responsible for the education of the very student[s] who [is the subject of the law suit], it is not appropriate to view the parties as engaged in a routine private law suit." *Bradley v. Richmond School Board, supra* at 718, 94 S.Ct. at 2019. The legislative history of the Act reflects that the issue presented by plaintiffs is a matter of "great national concern", *see, e. g.,* 1975 U.S.Code Cong. & Admin.News, pp. 1425, 1431–32, and thus retroactive application appears appropriate.

The second and third factors to be considered in determining retroactivity are the nature of the rights affected by the change in law and the impact of the change in law on those rights. "The Court has refused to apply an intervening change to a pending action where it has concluded that to do so would infringe upon or deprive a person of a right that had matured or become unconditional (citations omitted) *Bradley v. Richmond School Board, supra* at 720, 94 S.Ct. at 2020. That is not the case here, where the change in law involves defendants' performance of public responsibilities that predated the Act, namely the provision of education to handicapped children and procedural safeguard in the provision of such services. As in *Bradley,* we find no right of defendants to have been affected by the Act.

Furthermore, this is not a situation in which the change in the law will have a significant prejudicial impact on existing rights by imposing new obligations upon a party without notice or an opportunity to be heard. Defendants' obligation to provide education and procedural safeguards to handicapped children existed before the enactment of the Act. To qualify for assistance under the Act, the State had to have in effect a policy that assures all handicapped children the right to free appropriate education. 20 U.S.C. § 1412 (1975). As plaintiffs point out in their Memorandum of Law in Opposition to the present motions, Section 1413 of the prior Education of the Handicapped statute, 20 U.S.C. § 1413 (amended 1975), which was effective until September 30, 1977, required the State to institute procedural safeguards. The legislative history of the Act reflects that Congress intended to insure continuity in the provision of due process protection of handicapped children's right to education. *See* 1975 U.S.Code Cong. & Admin.News, pp. 1425, 1501–02. We are not persuaded by defendants' assertion that the changes concerning parental consent, binding effect of the hearing officer's decision, and the "30-day rule" were substantial. There is no indication that they created a significant burden.

Moreover, defendants had put these changes into effect during the pendency of

plaintiffs' claim before the Commissioner.[3] We see no reason why defendants should refuse to apply them simply because the claim arose earlier. *See Thorpe v. Housing Authority*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1968). Therefore, retroactive application of the Act is warranted and jurisdiction is properly established under 20 U.S.C. § 1415.

We note that in their Memorandum of Law plaintiffs have suggested alternative bases of jurisdiction under 28 U.S.C. § 1343 and the former 20 U.S.C. § 1413. Although jurisdiction may in fact be established under these provisions, it is unnecessary to decide this issue or whether plaintiffs have met the jurisdictional pleading requirements in light of our finding of jurisdiction under 20 U.S.C. § 1415.

■ Defendants also claim that plaintiffs have failed to state a claim upon which relief can be granted.[4] Specifically, defendants object to plaintiffs' failure to obtain the approval of the Commissioner prior to placing their son in a private out-of-state institution. They base their objection on New York Education Law §§ 4402 and 4407 requiring the Commissioner's approval of Board decisions to place handicapped children in out-of-state residential facilities.

We do not agree that these provisions of the New York Education Law are applicable here. The gravamen of plaintiffs' complaint is that the Board and the Commissioner failed to comply with federal and state law requiring them to identify and place their son in a timely and proper manner and that defendants' decision concerning his placement was erroneous. Plaintiffs did request the Committee's approval of their son's placement at the Grove School earlier in the school year. This request was first denied in September of 1970. Their appeal to the Commissioner was not decided until February of 1978. Defendants appear to be claiming that, during the pendency of the appeal, plaintiffs had no choice other than to accept the decision of the Commission or provide a suitable educational alternative at their own expense. In effect, this interpretation renders the Commissioner's decision final and unreviewable for the 1976–77 school year and deprives the defendants of the rights protected by the Education for All Handicapped Children Act and New York Education Law, namely, the proper and timely identification and placement of handicapped children and assurance of procedural safeguards in the provision of such services. It is reasonable to assume that, in light of the State's voluntary participation in the program for handicapped children established by the Act, the provisions of the New York Education Law are intended to comply with the federal Act and corresponding state law. This assumption is supported by the fact that our interpretation does not conflict with the intended goals of the statute requiring the Commissioner's approval. Defendants point out that the provision was intended to insure that children are placed in the least restrictive educational facility available. Where, as here, the parents of the child appeal from the Committee's denial of a residential placement, there is no danger that the Committee has imposed an unduly restrictive placement.

---

3. This was not the case in *Eberle v. Board of Public Education of the School District of Pittsburgh*, 444 F.Supp. 41 (D.Pa.1977), on which defendants rely heavily. There, the court specifically reserved the issue of retroactivity where an administrative proceeding was pending at the time the Act became effective. *Id.* at 44.

Defendants have urged us to follow the holding in *Eberle* denying retroactive application of the Act in cases where administrative proceedings were completed prior to October 1, 1977 and to extend it to the situation in the instant case. We decline to do so, based on our reading of the legislative history of the Act and our appli-

cation of principles developed by the Supreme Court and the Second Circuit concerning retroactive application of statutes.

4. Plaintiffs also complained of the failure of the Board of Education to reimburse them for 5,301 dollars of the annual tuition for the 1977–78 school year, and defendants moved to dismiss this claim for failure to state a claim upon which relief can be granted. This amount was subsequently paid in large part pursuant to a consent order entered by the New York Family Court. The parties agree that this portion of the case is moot, and defendants' arguments on this issue need not be considered.

Therefore, plaintiffs' failure to obtain Commissioner approval prior to placement at the Grove School is not fatal to their claim, and defendants' motion to dismiss is denied.

SO ORDERED.