John DOE et al., Plaintiffs,

v.

Dr. Gregory ANRIG et al., Defendants.

Civ. A. No. 79-2145-G.

United States District Court,
D. Massachusetts.

Nov. 7, 1980.

Anne M. Vohl, Burlington, Mass., for plaintiffs.

Anne Josephson, Asst. Atty. Gen., Boston, Mass., Debbie Shanley, Braintree, Mass., for defendants.

## MEMORANDUM AND ORDERS

GARRITY, District Judge.

This action is an appeal from an adverse ruling rendered by the Massachusetts Department of Education's Bureau of Special Education Appeals (Bureau) under the Education of the Handicapped Act, 20 U.S.C. § 1401 et seq. Plaintiffs, a child Joseph Doe with special educational needs and his parents, seek judicial review of a Bureau decision holding that the individual educational plans proposed by the Franklin Public Schools for the school years 1978–1979 and 1979–1980 were adequate and appropriate to meet Joseph's needs. In addition, plaintiffs seek judicial review of a 1977–1978 educational plan which they initially accepted, but later rejected. Plaintiffs have not sought administrative review by the Bureau of the 1977–1978 plan.

Defendants, State Commissioner of Education and Franklin School Committee, have moved to dismiss and for summary judgment for failure to exhaust administrative remedies in that plaintiffs did not seek review by the State Advisory Commission on Special Education (SAC) of the 1978–1979 and 1979–1980 educational plans and did not seek review by the Bureau of the 1977–1978 educational plan. Briefs were filed by all parties and the court heard oral argument.

The factual background is as follows: Programs for special educational needs of the student were prepared by the Franklin Public Schools and approved by his parents until he had completed the sixth grade. An education plan for his first year in junior high school was prepared by the school department and accepted by the parents in June 1977. However, during the summer of '77 their son experienced emotional difficulties and they changed their minds about his enrolling in the public junior high school. They did not formally reject the school department's plan but told school officials that they had found a program which they believed to be more suitable for their son at the Leland Hall School, a private day school for children with special needs, which has been approved by the Massachusetts Department of Education and is located in Norfolk, Massachusetts. The boy has been enrolled at Leland Hall from September 1977 until the present time.

At the beginning of the next school year, in the summer of 1978, the parents requested that the defendant school committee evaluate the boy's abilities and educational needs and, as a result, the committee proposed a program for him in the Franklin

Public Schools for the 1978–79 school year. His parents requested an independent evaluation, which was conducted during the following winter. Thereafter the defendant committee proposed a public school program for the 1979–80 school year. These two plans, for the 1978–79 and 1979–80 academic years, were rejected by the parents, who appealed to the Bureau of Special Education Appeals of the State Department of Education. The parents presented the testimony of the psychologist who had conducted the independent evaluation and of teachers at the Leland Hall School, all of whom recommended that the boy continue in the special program there. The school committee offered testimony of witnesses, most of them school department employees, recommending a program at the public high school. The Bureau hearing officer found that the education plan proposed by the school committee was best for the boy, specifically "the least restrictive, adequate and appropriate education plan to meet his special needs".

When notified of the decision, the parents rejected the recommendation contained in the Bureau's decision. On the printed form sent to them the following sentence appears: "I understand this rejection automatically constitutes an appeal to the State Advisory Commission without my having to separately note such an appeal." The parents returned this form with that sentence stricken and the following sentence substituted: "I will appeal directly to the U.S. District Court."

Soon thereafter the complaint in the instant case was filed, alleging various factual and legal errors in the Bureau's decision. The complaint also alleges that plaintiffs' rights under the Act were violated with respect to the 1977–78 school year because the defendant school committee failed to notify them that their initial acceptance of the public education plan proposed by the school department for 1977–78 did not preclude them from thereafter rejecting it and obtaining review by the Bureau of Special Education Appeals. An affidavit [1] filed by the mother states that she and her husband were led to believe by the school department personnel with whom they dealt that, once accepted, the plan was irrevocable.

The school committee's answer denied the allegations and asserted various special defenses, including failure to exhaust administrative remedies. It thereafter filed a motion for summary judgment on these grounds. The defendant Commissioner of the State Department of Education likewise moved to dismiss for failure to exhaust state administrative remedies.

For the reasons stated below, defendants' motions to dismiss are granted as to the 1977–78 school year. However, considering all the circumstances we shall defer ruling on the motions to dismiss as to the subsequent years until the position of the Department of Education [2] can be adequately ascertained and presented in these proceedings.

As to the 1977–78 school year, plaintiffs claim that they should have been told more clearly that they had the right to revoke their initial acceptance of the educational plan for their son and to bring the matter before the state Bureau. They assert that any failure to exhaust administrative remedies was due to the defendant school committee's failure to notify them of their due process rights, and that the defendants therefore may not rely on the failure to exhaust in seeking dismissal of the action. However, the court lacks subject matter jurisdiction of this claim of plaintiffs. The only jurisdiction conferred by 20 U.S.C. § 1415 is to entertain civil actions brought by parties aggrieved by the findings and decisions of state administra-

1. The court granted plaintiffs' motion to impound the mother's affidavit and other papers that would disclose the student's identity.

2. The Massachusetts application for funding under the Education of the Handicapped Act was originally approved by the Bureau of Education for the Handicapped, in the Department of Health, Education and Welfare. All functions of HEW under the Act were transferred to the new Department of Education by § 601 of Pub.L. 96–88, Title VI, Oct. 17, 1979, 93 Stat. 696.

tive agencies. No such findings or decision were made by any state agency with respect to the 1977–78 academic year; and hence we lack jurisdiction. *Stubbs v. Kline,* W.D.Pa., 1978, 403 F.Supp. 110, 114. This portion of plaintiffs' claim is therefore dismissed.

Defendants' motions to dismiss as to subsequent academic years present more complex problems. The exhaustion requirement asserted by the defendants implicates considerations of comity and federalism and calls for a close examination of the interrelationship between the state and federal statutory and regulatory schemes governing the rights and responsibilities of the parties. Also, the instant case does not present the usual exhaustion issue, where plaintiffs are seeking substantive relief which defendants assert may be obtained from an administrative agency.[3] Cf. *Oscar Mayer & Co. v. Evans,* 1979, 441 U.S. 750, 764–65, 99 S.Ct. 2066, 2075–76, 60 L.Ed.2d 609. Here defendants argue that access to a federal court, specifically authorized by a federal statute, should be postponed because of the availability of an unexhausted state procedure. They do not, of course, argue that the Massachusetts legislature could constitutionally limit access to the federal courts. See *Poitra v. Demarrias,* 8 Cir., 1974, 502 F.2d 23, 26; *Markham v. City of Newport News,* 4 Cir., 1961, 292 F.2d 711, 713–714.

The governing federal statute is the Education of the Handicapped Act. The principal provisions applicable here were added in 1975 by the passage of an amendment to that Act providing for Assistance for Education of All Handicapped Children, codified in 20 U.S.C. §§ 1411–1420. These provisions became effective October 1, 1977. Comprehensive regulations, which were promulgated on August 23, 1977, appear at 45 C.F.R. § 121a. Both the statute and the

regulations delineate certain procedural safeguards which the state must afford parents and guardians of handicapped children, in order to obtain federal funds under the Act. 20 U.S.C. § 1415; 45 C.F.R. § 121a.500 et seq. The federal scheme also specifies the circumstances under which a party aggrieved by a state agency's decision may appeal to state or federal court. 20 U.S.C. § 1415(e); 45 C.F.R. § 121a.509–512.

The Massachusetts statutory framework likewise prescribes the procedural rights and judicial remedies of parties aggrieved by the Bureau's decision on a child's individual education plan. The principal statute involved is entitled Education of Children with Special Needs. This statute was added by chapter 766 of the Acts of 1972, which became effective September 1, 1974 and was codified in Mass. G.L. c. 71B. The crucial provisions, including those governing appeal procedures, appear in section 3. State regulations promulgated under c. 766 are codified in 603 C.M.R. § 28.00, and are dated September 1, 1978, which is approximately one year after the date of the federal regulations and the effective date of the federal statute. Chapter 4 of the state regulations at volume 16, pp. 322–329, deals with appeal procedures.

A difficulty in ruling upon the defendants' motions to dismiss for the 1978–79 and 1979–80 years arises from the federal law's apparent assumption of a state procedural scheme different from that enacted in Massachusetts and, to a lesser extent, from the failure of the Massachusetts statute and regulations to include any reference to the availability of an appeal to the federal court system. Specifically, the federal statute mandating various procedural safeguards, 20 U.S.C. § 1415, permits judicial review after either (1) an impartial due process hearing by the state educational agency of parents' complaints about school

---

3. Plaintiffs do not challenge the proposition that, generally speaking, 20 U.S.C. § 1415(e) requires exhaustion of administrative remedies. *Armstrong v. Kline,* E.D.Pa., 1979, 476 F.Supp. 583, 601; *Harris v. Campbell,* E.D.Cal., 1979, 472 F.Supp. 51, 53; *Loughran v. Flanders,* D.Conn., 1979, 470 F.Supp. 110, 112. However,

none of these cases involved state procedural schemes that were *prima facie* in conflict with 20 U.S.C. § 1415(e)(2). In *Kline* and *Campbell* the state schemes provided for hearings at the local level, with review at the state level in accordance with subsection (c) of § 1415.

committee decisions or (2) an impartial review by the state educational agency of a due process hearing conducted at the local level. 20 U.S.C. § 1415(e). But the federal law does not contemplate review by a state educational agency of a due process hearing conducted by a state educational agency, which is the structure provided by the Massachusetts law.

The administrative review mechanism in Massachusetts is set forth both in the statute and in the implementing regulations. Chapter 766, Mass. G.L. c. 71B, § 3, provides that where an individual education plan for a special needs child is in dispute, a due process hearing must be conducted by the Bureau of Special Education Appeals, i.e., the state educational agency. If the parents, guardians or custodians of the child do not accept the Bureau determination, the matter is referred automatically to the State Advisory Commission (SAC), a second agency at the state level. The provision conferring appellate responsibilities on the SAC appears in the 13th unnumbered paragraph of Mass. G.L. c. 71B, § 3, as follows:

> If the parents, guardians or persons with custody reject the educational placements recommended by the department and desire a program other than a regular education program, the matter *shall be referred* to the state advisory commission on special education to be heard at its next meeting. The commission shall make a determination within thirty days of said meeting regarding the placement of the child. If the parents, guardians or persons with custody reject this determination, they may proceed to the superior court with jurisdiction over the residence of the child and said court shall be authorized to order the placement of the child in an appropriate education program. (Emphasis added.)

Ancillary provisions in the state regulations are at 603 C.M.R. ¶ 610.0, which states:

*SAC: Appeals.*

> In addition to the duties specified in ¶¶ 608.0 and 609.0, the SAC shall decide appeals in accordance with Chapter 4 and G.L. c. 71B, § 3. The SAC shall establish any procedures which are necessary or desirable to enable it to determine such appeals.

and ¶ 405.2, which provides that a parent's "rejection of the decision of the Bureau shall automatically constitute an appeal to the SAC without the necessity of the parent's separately requesting such an appeal."

It would seem, therefore, that under the Massachusetts statute and regulations, SAC review of a Bureau decision adverse to the wishes of the parents is mandatory and that in bypassing the SAC, the plaintiffs in the instant case have evaded the provisions of Massachusetts law.

On the other hand, where the initial due process hearing is conducted by a state agency in the first instance, as in Massachusetts, further administrative review is not authorized—at least not explicitly—by the federal statute and implementing regulations. Federal law permits an appeal to a district or state court of competent jurisdiction after the initial due process hearing if the hearing is held by the state agency, i.e., the Bureau, or after review by the state agency if the initial hearing is held at the local level. In 20 U.S.C. § 1415(e)(2) the Act provides specifically as follows:

> Any party aggrieved by the findings and decision made under subsection (b) of this section who does not have the right to an appeal under subsection (c) of this section, and any party aggrieved by the findings and decision under subsection (c) of this section,[4] *shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or*

---

4. References to subsection (c) are irrelevant because that subsection applies only to states in which an initial due process hearing is conducted by a local educational agency or an intermediate educational unit. As stated at p. 45 of the state's Annual Program Plan for fiscal year 1980, "Federal regulations regarding administrative appeal to the [state] department of education (121a.510) do not apply in Massachusetts, since the Department conducts all hearings."

*in a district court of the United States* without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. (Emphasis added.)

In providing for judicial review of "the findings and decisions made under subsection (b)", the federal statute must be referring, insofar as it deals with Massachusetts procedures, to the impartial due process hearing conducted by the Bureau. Hence what appears to be a *prima facie* conflict between the state and federal laws: state law requires administrative review by the SAC and federal law permits judicial review of a Bureau decision without resort to the SAC.

A similar inconsistency between the state and federal laws may be found in the provisions relating to the administrative finality of the Bureau's decision. Plainly, under the Massachusetts scheme the decision of the Bureau is not final and may be reversed or modified by the SAC. On the other hand, 20 U.S.C. § 1415(e)(1) provides, "A decision made in a hearing conducted pursuant to paragraph (2) of subsection (b) of this section shall be final, . . ." (with exceptions not here applicable).

Defendants contend that § 1415(e)(2) does not confer any right to immediate judicial review. They point out that the Act, read as a whole, affords the states much flexibility in formulating and implementing the procedural safeguards mandated by § 1415 and rely on subsection (b)(1) of that section, which states that the procedures required by that section "shall include, but shall not be limited to" the particular safeguards enumerated in subsections (b) and (c). See also 115 C.F.R. § 121a.506. True, the case law underscores the states' need for leeway in establishing procedural safeguards. As

stated in *Eberle v. Board of Public Education*, D.Pa., 1977, 444 F.Supp. 41, 43:

These subsections provide the basic structure for the establishment of a review procedure by the states. *More elaborate due process guarantees may be instituted by individual states.* (Emphasis added.)

Also, the legislative history of § 1415 supports the district court's statement in *Eberle.* In their report on the 1975 amendments, the conferees reported that they did "not intend that this provision [§ 1415] will require changes in existing arrangements where due process hearings are conducted at the level of the State educational agency rather than at the local level." [5] Statement of Senator Williams, Congressional Record–Senate for November 19, 1975, at 37415. Although the conferees evidently believed that, where the due process hearing was conducted at the state level, further review at the state level was "unnecessary", this is not the same as intending that it should be precluded.

On the other hand, it is clear that Congress intended swift, meaningful review of due process hearing decisions. The legislative history of the federal Act expresses a strong interest in resolving disputes over individual education plans without delay. In presenting the 1975 amendments to the United States Senate, Senator Williams stated, Congressional Record–Senate for November 19, 1975, at 37416,

. . . I cannot emphasize enough that delay in resolving matters regarding the education program of a handicapped child is extremely detrimental to his development. The interruption or lack of the required special education and related services can result in a substantial setback to the child's development. Thus, in view of the urgent need for prompt resolution of questions involving the education of handicapped children it is expected that all hearings and reviews conducted pursuant to these provisions will be commenced and disposed of as quickly as

---

5. As stated *ante*, the Massachusetts scheme was added by chapter 766 of the Acts of 1972, and became effective September 1, 1974.

Thus, the Massachusetts arrangements were "existing" at the time of the 1975 hearings.

practicable consistent with fair consideration of the issues involved.

This concern is reflected in a comment to federal regulation 45 C.F.R. § 121a.506, which permits states to use mediation as an intervening step prior to conducting a formal due process hearing, but concludes at p. 352, "However, mediation may not be used to deny or delay parents' rights under this subpart." Significantly, under the Massachusetts scheme, intervals of more than two months could be consumed by SAC reviews.[6]

In addition to the federal interest in avoiding delay, there is also a strong federal interest in assuring that any appellate review of the initial due process decision is full, fair, and independent. Subsection (e)(2) of § 1415 contains strong provisions for judicial review. The reviewing court is not limited to the administrative record, but is authorized to receive new evidence, and the decision is to be made *de novo*, based upon the preponderance of the evidence. Thus, there is a strong federal concern that any review be meaningful as well as speedy.

Yet the composition of the SAC, the procedures governing its review of individual education plans, and the nature and extent of its other administrative duties dilute its capacity for quick and meaningful review. First, SAC's membership must include handicapped individuals, secondary school teachers, parents and teachers, as well as experts in special needs programs. 20

U.S.C. § 1413(a)(12). See also 45 C.F.R. § 121a.650–653. State law also mandates participation by many divergent groups. Mass. G.L. c. 15, § 1Q; 603 C.M.R. § 28.607–611. There are presently 14 members of the SAC and they meet only monthly. Second, the procedures applicable to SAC's consideration of individual education plans do not assure impartial or independent review. Under 603 C.M.R. ¶ 406.0, SAC must comply with paragraphs (7) and (8) of Mass. G.L. c. 30A, § 11, the Massachusetts Administrative Procedure Act. Under paragraph 7 of Mass. G.L. c. 30A, § 11,[7] it is permissible for the SAC to make a decision without having heard or read any evidence, and to handle appeals on an ad hoc basis. Furthermore, it is the policy of the SAC to accept written argument only. Third, reviewing individual education plans is essentially peripheral to SAC's primary functions under state and federal law. Under Mass. G.L. c. 15, § 1Q, which establishes the commission, SAC's principal responsibility is the annual submission of a report to the State Department of Education. These annual reports evaluate the quality and adequacy of special education programs in the commonwealth and recommend improvements. The SAC reports are accorded great weight in the formulation of the state's programs for educating the handicapped. In fact, if the State Department of Education decides not to implement the SAC recommendations and agreement cannot be reached informally, public hearings must be held to

---

**6.** Under 603 C.M.R. ' 406.0, SAC must consider an appeal at its next monthly meeting if it receives the appeal at least 15 days before the meeting. Under paragraph 13 of Mass. G.L. c. 71B, § 3, SAC must render its decision within thirty days of the meeting. Under 603 C.M.R. '. 406.0 the decision must be sent to the parents no later than five days after it is rendered. Thus, if a Board decision is made fourteen days before a SAC meeting, it may not be reviewed until the following meeting, approximately 44 days after the Bureau decision. If SAC takes all the time permitted by law, the parents may not receive notification of the SAC decision until 35 days later, over 2½ months after the Bureau's decision.

**7.** Paragraph 7 reads as follows:

(7) If a majority of the officials of the agency have neither heard nor read the evidence, such decision, if adverse to any party other than the agency, shall be made only after (a) a tentative or proposed decision is delivered or mailed to the parties containing a statement of reasons and including determination of each issue of fact or law necessary to the tentative or proposed decision; and (b) an opportunity is afforded each party adversely affected to file objections and to present argument, either orally or in writing as the agency may order, to a majority of the officials who are to render the final decision. The agency may by regulation provide that, unless parties make written request in advance for the tentative or proposed decision, the agency shall not be bound to comply with the procedures of this paragraph.

resolve any dispute between the commission and the department. In addition, 20 U.S.C. § 1413(a)(12) requires that, to fulfill its responsibilities as a state advisory panel under the federal Act, SAC must advise the state educational agency of unmet needs within the state in the education of handicapped children; comment publicly on any proposed state rules or regulations regarding the education of handicapped children and the procedures for distributing the federal funds available under the Act; and assist the state in developing and reporting such data and evaluations as may assist the federal Department of Education in evaluating the state's programs for education of the handicapped. Significantly, the federal regulation, 45 C.F.R. § 121a.652, which implements 20 U.S.C. § 1413(a)(12), does not include review of individual education plans among the functions to be performed by advisory panels.

Nonetheless, Massachusetts has stated a strong interest in the legitimacy of the procedures currently mandated by state law. The Massachusetts legislature's statement of the purposes in enacting chapter 766 includes the following observation:

> Recognizing, finally, that the present inadequacies and inequities in the provision of special needs services to children with special needs have resulted largely from a lack of significant parent and lay involvement in overseeing, evaluating, and operating special needs programs, this Act is designed to build such involvement through the creation of regional and state advisory committees with significant powers and by specifying an accountable procedure for evaluating each child's special needs thoroughly before placement in a program and periodically thereafter.

Since the interests involved—both state and federal—are important, we hesitate to proceed without some representation from the Department of Education, the agency that is primarily responsible for reconciling them. The Department's participation in some form is particularly appropriate in this case since it has primary responsibility for the approval of state plans under the Act. 20 U.S.C. § 1416. The major purpose of the Act is to provide funding for special needs programs: a state's compliance with the procedural safeguards mandated by § 1415 is a precondition of such federal funding. See the joint explanatory statement of the Committee of Conference, 2 U.S. Code Cong. & Admin. News, pp. 1480, 1501 (1975); also *Eberle v. Board of Public Education of the School District of Pittsburgh, Pennsylvania, supra,* at 44 ("The safeguards are not intended as independent of funding but are imposed as a condition of funding.") It is the Department that is charged, in the first instance, with assuring that the state plan meets the § 1415 requirements before the state receives funds under the Act, 20 U.S.C. § 1413; and its position as to the legality of the Massachusetts scheme,[8] even if not dispositive, would normally be accorded considerable weight by this court.

Finally, deferring any ruling on the pending motions will not have any irrevocable detrimental effects on the parties. The actual controversy here seems to relate less to the educational program to be pursued by the student than to who shall pay for it. The student's parents have been paying the cost of his education at the Leland Hall School since September 1, 1977, and evidently plan to keep him there. This course was recommended by the independent evaluator in her testimony before the Bureau when she stated that, in her opinion, removing him from Leland Hall would cause him to lose all the gains he made in his two years there. The complaint in the instant case seeks reimbursement for all tuition and

---

8. The approval by letter to Commissioner Anrig dated July 31, 1979 of the Massachusetts plan for the fiscal year 1980 is of scant assistance in resolving the issues discussed in this memorandum, partly because the Massachusetts plan includes a material misstatement of fact: it states that state regulation " 408.0 describes the availability of judicial review in both state and federal courts. In fact, " 408.0 and every other provision of Massachusetts statutes and regulations mention only state judicial review; they are completely silent regarding the availability of review by a federal court under 20 U.S.C. § 1415(e).

transportation payments made by the parents to Leland Hall. This prayer is evidently predicated upon *Amherst–Pelham Regional School Committee v. Department of Education*, 1978 Mass.A.S. 2673, —— Mass. ——, 381 N.E.2d 922 in which the Supreme Judicial Court held that the State Department of Education was authorized to order retroactive reimbursement of the cost of keeping a child with special needs in a program at a private school, pending a successful appeal to the Bureau.[9] Without deciding whether or not the principles enunciated in that case apply to the instant controversy, we do note that postponing any ruling until some effort has been made to ascertain the position of the Department of Education will not result in any detriment to the emotional or educational development of the child.

■ Summarizing, then, the reasons for seeking the participation of the Department of Education are as follows: First, the statutory question is not capable of ready resolution. Whereas the statute on its face seems to permit immediate district court review after due process hearings held at the state level, a closer examination reveals ambiguities which can be resolved only by a more refined understanding of the purposes and policies of the Act. Under the circumstances, it is particularly appropriate to seek the view of the agency primarily responsible for its administration and enforcement. Second, important state and federal interests are involved. Finally, the parties will not suffer irreparable injury due to any delay that results from this ruling.

We shall not determine the precise form of the Department's participation in these proceedings without receiving the benefit of proposals by the parties. Preliminarily we note that the practice of seeking the participation of a federal department either

as a party or as amicus curiae is discussed in *Rosado v. Wyman*, 1970, 397 U.S. 397, 406–407, 90 S.Ct. 1207, 1214–1215, 25 L.Ed.2d 442 and was followed by this court in *Newfield House, Inc. v. Mass. Dept. of Public Welfare*, Civil Action No. 76–3742–G, when we posed questions regarding the state medicaid program to Don I. Wortman, Acting Administrator of HEW, by letter dated December 30, 1976. The parties' attention is also directed to the principles governing the doctrine of primary jurisdiction, sometimes called the deference doctrine, discussed by Chief Judge Coffin in *Mashpee Tribe v. New Seabury Corp.*, 1 Cir., 1979, 592 F.2d 575, 580–581, and *National Tank Truck Carriers, Inc. v. Burke*, 1 Cir., 1979, 608 F.2d 819, 821–823, and cases cited therein. See also the reference of claims on behalf of a handicapped child in *Stubbs v. Kline, supra*, 463 F.Supp. at 116–117.

*Procedural Order*

Accordingly it is ordered that counsel confer with a view to soliciting the participation of the Department of Education in these proceedings either as a party or an *amicus curiae* and to stipulating a reference to the Department of the following questions:

(1) May a parent bring a civil action in this court under 20 U.S.C. § 1415(e)(2) without presenting his complaint to the Massachusetts State Advisory Commission for Special Education?

(2) Does the Massachusetts Annual Program Plan for fiscal year 1980 have the approval of the Department of Education in the light of the absence of any reference in the Massachusetts statutes and regulations to the availability of review in a district court of the United States?

9. There are factual distinctions between the two cases. For example, it was stated in the opinion by Chief Justice Hennessey, at 2688, "We note at the outset that this is not a case in which parents have withdrawn their child voluntarily from the c. 766 system." On the other hand, the principles stated elsewhere in the *Amherst–Pelham* opinion may well apply in this case if plaintiffs prevail on the merits. We

do not, of course, make any ruling on this potential issue in this case at this time. We also note that, whether or not plaintiffs could obtain retroactive reimbursement under the authority of *Amherst–Pelham*, damages may not be available under the federal Act. See *Loughran v. Flanders*, D.Conn., 1979, 470 F.Supp. 110. Again, we reserve this issue for consideration on the merits.

(3) Is the appellate function of the Massachusetts SAC, in the light of its organization and procedures as described in this memorandum, consistent with federal law?

The parties may stipulate modifications of these questions and suggest the elimination of some of them or the addition of other questions.

If the parties should be unable to stipulate, they shall file separate submissions explicating their positions and proposals.

The time for filing either such a stipulation or separate proposals shall be on or before November 24, 1980.