RUTH ANNE M and Gordon M., a minor, by and through his mother and next friend, Ruth Anne M., Plaintiffs,

v.

ALVIN INDEPENDENT SCHOOL DISTRICT, et al., Defendants.

Civ. A. No. G–80–11.

United States District Court, S. D. Texas, Galveston Division.

Jan. 18, 1982.

J. Patrick Wiseman, Nelson & Mallett, Houston, Tex., for plaintiffs.

David M. Feldman, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

HUGH GIBSON, District Judge.

Plaintiffs brought this action against defendants Alvin Independent School District (AISD) and various school officials pursuant to the Education for All Handicapped Children Act of 1975 (EHCA), 20 U.S.C. § 1401 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the fourteenth amendment of the United States Constitution. Plaintiffs' original petition, filed January 14, 1980, seeks compensatory and punitive damages, as well as injunctive and declaratory relief. Jurisdic-

tion is alleged under 20 U.S.C. § 1415(e)(2), 29 U.S.C. § 794, 42 U.S.C. § 1983, 28 U.S.C. § 1331, and 28 U.S.C. § 1343(4).

Gordon M. is an emotionally disturbed adolescent presently enrolled in special education classes in AISD. At the commencement of this lawsuit, Gordon was attending regular classes at AISD, supplemented by one resource class, an educational placement viewed by plaintiffs as inappropriate under the EHCA. Plaintiffs preliminarily sought interim relief to secure private residential placement for Gordon M. pending resolution of the case on its merits. The Court, however, declined to consider the application for preliminary injunctive relief until plaintiffs exhausted their administrative remedies pursuant to the EHCA.

An administrative hearing officer found Gordon's then-current placement with AISD inappropriate for his unique educational and related service needs, and recommended a highly structured classroom setting with individual therapy. The AISD Board of Trustees then issued a statement adopting the hearing officer's findings, but, relying on the "pendency clause" of the EHCA, 20 U.S.C. § 1415(e)(3), declined to initiate a change in placement pending resolution of this action. Thereafter, this Court on July 16, 1980, ordered the interim placement of Gordon M. in an all-day, self-contained, highly structured special education class. Plaintiffs have announced to the Court that they will not further contest the appropriateness of this placement. *See* Agreed Motion for Continuance, filed November 10, 1980. Therefore, plaintiffs' claims for prospective injunctive and declaratory relief are moot.

Plaintiffs continue to pursue a substantial claim for damages, however, based upon alleged violations of the EHCA, the Rehabilitation Act, the fourteenth amendment, and 42 U.S.C. § 1983. These claims are presently before the Court on the defendants' motion to dismiss or for summary judgment, and plaintiffs' cross-motion for summary judgment. Defendants contend that these claims are barred by plaintiffs' failure to exhaust administrative remedies under the EHCA, by the Texas two-year statute of limitations, Tex.Rev.Civ.Stat. Ann. art. 5526 (Vernon Supp. 1980–81), and the doctrine of laches. Further, defendants aver that, as a matter of law, neither the EHCA nor section 504 of the Rehabilitation Act authorize a private right of action for damages, and that, accordingly, neither statute can serve as a springboard for a damage action under 42 U.S.C. § 1983. Summary judgment is also sought on plaintiffs' constitutional claims.

Plaintiffs seek summary judgment on issues of liability only. For the reasons set forth below, plaintiffs' motion for summary judgment will be denied at this time, and defendants' motion to dismiss or for summary judgment will be granted in part and denied in part.

I

## THE FACTUAL BACKGROUND

Gordon M. first entered AISD in 1972 at the age of seven. Initially, Gordon was considered minimally brain damaged, and placed in special education classes. AISD officials considered Gordon's educational development in this setting excellent, and after further evaluation by the District, Gordon was reclassified as learning disabled and gradually mainstreamed into regular education courses. Satisfied with Gordon's achievement, AISD in 1975 dismissed Gordon completely from its special education program. He completed elementary school in the regular education program and was advanced to junior high school.

During the 1977–78 school year, Gordon began to receive failing grades and developed a seizure disorder which was subsequently attributed to mod-hypoglycemia. As far as AISD is concerned, Gordon performed at above average levels until that year, successfully advancing through each preceding grade. It is undisputed that Gordon is a child of above average intelligence, but plaintiffs vigorously deny that his academic performance from 1974 to 1977 approached his intellectual potential. Plaintiffs contend that Gordon then, as now, was

suffering from an emotional disorder which precluded his educational development in regular education classes, and that AISD summarily passed him through successive grades despite poor and sometimes failing marks.

Dissatisfied with Gordon's progress at AISD and concerned for his physical well being, Gordon's mother withdrew him from the District in January 1978. Gordon was placed in Angie Nall Hospital, a private residential facility for medically and emotionally impaired children. As a result of plaintiffs' limited financial resources, Gordon was withdrawn from Angie Nall in 1978 and enrolled in West Briar School, a private facility in Houston, Texas. West Briar does not maintain a special education program, however, and after a near-suicidal episode which resulted in Gordon's hospitalization in the psychiatric unit of Bellaire General Hospital for four months, school authorities determined that Gordon's emotional problems prevented him from benefitting from West Briar's educational program. Thus, in April 1979 Gordon returned to AISD, where he was identified as a handicapped child within the meaning of the EHCA and individualized education program (IEP), although unacceptable to plaintiffs, developed.

## II

## DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

### A. The EHCA Exhaustion Requirement

■ Generally, a party seeking to invoke federal district court jurisdiction under the EHCA must first exhaust the state administrative procedures provided for in the Act. 20 U.S.C. § 1415(e). The legislative history of the Act, however, reflects the understanding that exhaustion is not a rigid requirement. *See Ezratty v. Puerto Rico,* 648 F.2d 770, 774 & n.5 (1st Cir. 1981); *Mona-*

*han v. Nebraska,* 645 F.2d 592, 597 (8th Cir. 1981); *Sessions v. Livingston Parish School Board,* 501 F.Supp. 251, 254 (M.D.La.1980); *Doe v. Koger,* 480 F.Supp. 225, 228 (N.D. Ind.1979); *Armstrong v. Kline,* 476 F.Supp. 583, 601–02 (E.D.Pa.1979), *remanded on other grounds sub nom. Battle v. Pennsylvania,* 629 F.2d 269 (3rd Cir. 1980), *on remand,* 513 F.Supp. 425 (E.D.Pa.1980); *Harris v. Campbell,* 472 F.Supp. 51, 53–54 (E.D. Va.1979); *Loughran v. Flanders,* 470 F.Supp. 110, 112 (D.Conn.1979); *New York State Association for Retarded Children, Inc. v. Carey,* 466 F.Supp. 479, 486, *aff'd,* 614 F.2d 644 (2d Cir. 1979).

■ It is undisputed in this case that plaintiffs were not notified by AISD of their administrative rights under the Act as contemplated in 20 U.S.C. § 1415(b)(1)(C). Apparently the District took no notice-triggering action under the Act with respect to the identification, evaluation or educational placement of Gordon.[1] Nor have defendants established that plaintiffs otherwise knew or should have known of the availability of administrative recourse when the unilateral decision to withdraw Gordon from AISD was made in January 1978. The wooden application of the exhaustion doctrine in these circumstances would accord neither with the salutary interests the doctrine is intended to serve, *see McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1968), nor with the basic purposes underlying the EHCA. *See Gladys J. v. Pearland Independent School District,* 520 F.Supp. 869, 873–74 (S.D.Tex.1981). Accordingly, the Court holds that plaintiffs' action is not barred by their failure to exhaust administrative remedies under the EHCA.

### B. The Statute of Limitations

Plaintiffs' damage action involves alleged acts or omissions of defendants in connection with the public education of Gordon M. beginning in the fall of 1977. This suit was

---

1. The EHCA requires local educational agencies to inform parents fully of all procedures available under section 1415. 20 U.S.C. § 1415(b)(1)(D). However, notice is required only when the agency proposes to initiate or change or refuses to initiate or change the identification, evaluation or educational placement of the child or the provision of a free appropriate public education to the child. *Id.* § 1415(b)(1)(C).

commenced on January 14, 1980. No federal statute of limitations governs the time period for the bringing of the actions involved here, hence the Court must apply analogous state limitation provisions. In this instance, defendants urge that the applicable state statute, Tex.Rev.Civ.Stat. Ann. art. 5526, bars plaintiffs' damage action insofar as it concerns events transpiring more than two years before the filing of suit.

Plaintiffs contend that the EHCA, which became effective on October 1, 1977, imposes upon defendants the affirmative obligation to discover, identify, evaluate and appropriately place all handicapped children within the jurisdiction of AISD. *See Gladys J. v. Pearland ISD, supra,* at 873–74 n.5. Clearly, Gordon was not identified by the District as a handicapped child prior to his withdrawal on January 23, 1978, and plaintiffs allege that the District thereby defaulted on its obligation to provide him a "free appropriate public education"[2] imposed by Congress as a condition to receipt of federal moneys under the Act.

■ Article 5526, a statute frequently utilized in federal civil rights cases by courts in this circuit, provides for the commencement and prosecution of a lawsuit within two years after the cause of action shall have accrued. Tex.Rev.Civ.Stat.Ann. art. 5526. While state law determines the period of limitations to be applied in cases such as this, however, federal law determines when a cause of action accrues. *See, e.g., Cline v. Brusett,* 661 F.2d 108, 110 (9th Cir. 1981). Under federal law, a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action. *Id; Lavellee v. Listi,* 611 F.2d 1129, 1131 (5th Cir. 1980).

■ The pleadings in this case do not establish as a matter of law that plaintiffs' cause of action is barred by the statute of limitations. The injury made the basis of this action is the alleged failure of defendants to comply with a legal duty owed plaintiffs under federal law. Defendants have not carried the burden of showing the absence of any genuine issue of fact as to whether plaintiffs knew or had *reason* to know of defendants' alleged breach of this duty more than two years before the filing of plaintiffs' complaint. Therefore, defendants' motion to dismiss or for summary judgment on this ground is denied.

C. The Question of Damages: The Contours of Appropriate Relief under the EHCA

In enacting the Education for All Handicapped Children Act of 1975, the Congress expressly created a private cause of action and provided district courts with the power to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2).[3] The language indicates that the Court has broad authority in granting relief under the Act, a conclusion reinforced by the Act's legislative history, which states that "the court ... shall grant all appropriate relief." S.Rep.No.94–455, 94th Cong., 1st Sess. 50, *reprinted in* [1975] U.S.Code Cong. & Ad.News 1425, 1503. *See Monahan v. Nebraska,* 491 F.Supp. 1074, 1076, 1094

---

**2.** The term "free appropriate public education" means special education and related services provided at public expense in conformity with the *individualized education program* required under 20 U.S.C. § 1414(a)(5). 20 U.S.C. § 1401(18). "Special education" is specially designed instruction, at no cost to parents, to meet the unique needs of a handicapped child, including classroom instruction, instruction in physical education, home instruction, and instruction in hospitals and institutions. *Id.* § 1401(16). "Related services" include transportation and such developmental, corrective and other supportive services as may be required to assist a handicapped child to benefit from special education; *provided,* that medical services shall be for diagnostic and evaluation purposes only. *Id.* § 1401(17).

**3.** Section 1415(e)(2) provides that a party aggrieved by administrative findings and decisions under section 1415(c) "shall have the right to bring a civil action with respect to the complaint presented pursuant to this section" in a state or federal district court. The court's *decision is to be made on a preponderance of* the evidence, consisting of the records of the administrative proceedings and additional evidence upon request of a party.

(D.Neb.1980), *aff'd* 645 F.2d 592 (8th Cir. 1981). Nevertheless, the grant of jurisdiction conferred by 20 U.S.C. § 1415(e)(2) on its face is a limited one. *See Loughran v. Flanders, supra,* at 113.

Judicial opinions that have considered the issue whether damages are available under the EHCA diverge markedly. While only one court to date has awarded damages of any type in a case arising under the EHCA, *Tatro v. Texas,* 516 F.Supp. 968, 979 (N.D. Tex.1981), several courts have indicated that a damage remedy may be appropriate under the Act. *Anderson v. Thompson,* 658 F.2d 1205, 1209–14 (7th Cir. 1981); *Campbell v. Talladega County Board of Education,* 518 F.Supp. 47, 56–57 (N.D.Ala.1981), *Monahan v. Nebraska* (D.Neb.), *supra,* at 1094; *Boxall v. Sequoia Union High School District,* 464 F.Supp. 1104, 1112 (N.D.Cal. 1979). Other courts have held flatly that the EHCA does not authorize an award of damages, *Miener v. Missouri,* 498 F.Supp. 944, 949 (E.D.Mo.1980); *Hines v. Pitt County Board of Education,* 497 F.Supp. 403, 409 (E.D.N.C.1980); *Loughran v. Flanders, supra,* at 115, or have questioned the appropriateness of a damage remedy in view of the congressional purposes underlying the Act. *E.g., Ezratty v. Puerto Rico, supra,* at 777.

While rejecting the view that the EHCA exposes school districts to open-ended tort liability for "educational malpractice," a coalescing majority of courts now recognize that in exceptional circumstances a limited damage award, compensating parents for the costs of obtaining educational services that a school district was obligated to furnish under the Act but did not, may be appropriate. *See, e.g., Anderson v. Thompson, supra,* at 1213 & n.12; *Foster v. District of Columbia Board of Education,* 523 F.Supp. 1142, 1146 (D.D.C.1981); *Tatro v. Texas, supra,* at 978. *See also Monahan v. Nebraska (D.Neb.), supra,* at 1094. This measure of damages, in a sense, reflects no more than a judicially compelled provision of the statutorily mandated "free appropriate public education." *Tatro v. Texas, supra. But cf. Stemple v. Board of Education of Prince George's County,* 623 F.2d 893 (4th Cir. 1980), *cert. denied,* 450 U.S. 911, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981) (20 U.S.C. § 1415(e)(3) precludes reimbursement to parents who unilaterally alter placement of child during pendency of proceedings under EHCA).

The leading case in support of a limited reimbursement damage remedy is *Anderson v. Thompson.* In *Anderson* the Seventh Circuit Court of Appeals addressed the issue whether 20 U.S.C. § 1415(e)(2), authorizing aggrieved parents to bring a civil action and district courts to provide "such relief as the court determines is appropriate," includes damages as "appropriate" relief. The court concluded that damages, however limited, are not within the scope of relief authorized by the section, absent exceptional circumstances. 658 F.2d at 1209–10.

Initially, the Seventh Circuit found the availability of a damage remedy under 20 U.S.C. § 1415(e)(2) to be a matter of statutory interpretation, with the ultimate issue being whether Congress intended to create the remedy asserted by plaintiffs. *Id.* at 1210.[4] In deciding that issue, the court

---

**4.** The Seventh Circuit rejected the argument advanced by defendants in this case that *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) provided the proper analytical framework:

> A *Cort v. Ash* analysis is not appropriate because the issue is not whether there is an implied private right of action.... Here Congress has expressly created a cause of action and empowered the district court to grant "such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2). The question is whether damages are "appropriate" relief.

658 F.2d at 1210 n.7.
The court of appeals reasoning appears sound. *Cort v. Ash* would require consideration of extraneous factors, *e.g.,* whether the cause of action is one traditionally relegated to state law in an area basically the concern of the states. *See Loughran v. Flanders, supra,* at 113, 115. Beyond the extent to which congressional concern with matters of federalism may have influenced congressional provision of a remedy under the EHCA, that consideration is of no import. Of course, the analysis to be employed here bears some resemblance to that in *Cort v. Ash* to the extent that the latter "guides in the

looked first to the statutory language at issue, viewing it in the overall context of the Act. The court then examined the legislative history of the Act, and the purposes Congress sought to achieve in enacting the legislation. Consideration of these factors persuaded the court of appeals that section 1415(e)(2) generally was intended to provide only injunctive relief as a final procedural safeguard to ensure the provision of a free appropriate public education for a handicapped child. *Id.*

Turning to the statutory language of section 1415(e)(2) in the overall context in which it appears, the Seventh Circuit found no indicia of congressional intent to create any type of educational malpractice action. Congress instead designed a detailed and multi-level process through which an aggrieved parent ultimately can seek an "appropriate" program decision from a district court.

> Viewing the language of section 615(e)(2) [20 U.S.C. § 1415(e)(2)] in the context of section 615 [20 U.S.C. § 1415] leads us to believe that Congress did not envision appropriate relief generally to include a damage remedy. Instead, section 615(e)(2) appears to be the last of many procedural safeguards in a section [20 U.S.C. § 1415] aimed at ensuring proper placements and programs for handicapped children.... [T]he final procedural safeguard, an express right to bring an action in the district court and receive "appropriate" relief, is provided in section 615(e)(2).... In our view, the context makes clear that "appropriate" relief was generally intended to be restricted to injunctive relief, the statutory language giving the district judge wide latitude to fashion an individualized educational program for the child.

*Id.* at 1210–11.

The court gleaned a similar intent from the legislative history of the Act, including the remarks of the legislation's sponsors. Congress enacted the EHCA in order to aid the states in educating their handicapped children by providing necessary funds. Congress also conditioned the receipt of federal moneys on the obligation to provide handicapped children with a free appropriate public education. The legislative history emphasizes procedural safeguards to ensure appropriate placements, but recognizes that diagnosis of special education problems is difficult and uncertain, that severe budgeting constraints exist, and that much time will be required before all handicapped children can be helped. Clearly, Congress thought in terms of curing the problem through the provision of prospective relief. Yet the legislative history of the Act is silent on the question of whether a damage remedy was intended under section 1415(e)(2). In these circumstances, the *Anderson* court inferred that a damage remedy was not generally intended. *Id.* at 1211–13.

Finally, the Seventh Circuit concluded that a damage remedy would not be consistent generally with the goals of the Act:

> When a school district makes a good faith effort to provide a child with an appropriate education, we do not believe that as a general rule it is good policy to require that a school district pay money damages if it later turns out that a different programming decision should have been made. Moreover, in as new and undeveloped a field as special education, there is a need for flexibility and experimentation in programming for handicapped children. We take judicial notice of the fact that at the present time, problems of classification and treatment abound. Disagreements will arise and errors will be made. In short, we perceive that educational programs for the handicapped will suffer if school officials, for fear of exposing themselves to monetary liability for incorrect placements, hesitate to implement innovative educational reforms. *See Loughran v. Flanders,* 470 F.Supp. 110 (D.Conn.1979). For this reason, implying a general damage remedy would hinder rather than help the very children

central task of ascertaining legislative intent." *California v. Sierra Club,* 451 U.S. 287, 302, 101 S.Ct. 1775, 1783, 68 L.Ed.2d 101, 113 (1981) (Rehnquist, J., concurring).

for whose benefit the statute was enacted.

*Id.* at 1213 (footnote omitted).

Although unable to envision any set of circumstances in which Congress would have intended the EHCA as a vehicle for the imposition of open-ended tort liability upon state and local education agencies, the *Anderson* court interpreted 20 U.S.C. § 1415(e)(2) as authorizing a limited damage award in exceptional circumstances. Damages were confined, however, to parents' costs of obtaining services that the school district was required to provide under the Act. *Id.* at 1213 & n.12. Initially, the court considered whether the Fourth Circuit's construction of a related provision, 20 U.S.C. § 1415(e)(3), in *Stemple v. Board of Education, supra*, would preclude reimbursement of costs.

. 20 U.S.C. § 1415(e)(3) provides in relevant part:

> During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, . . . until all such proceedings have been completed.

The Fourth Circuit concluded that section 1415(e)(3) precludes parents who unilaterally elect to place their child in a private school after school authorities make a decision as to identification, evaluation and placement of a handicapped child from recovering the costs thereby incurred. *Stemple, supra*, at 897–98. The *Anderson* court noted that *Stemple* would .not preclude reimbursement in factual situations not embraced by the Fourth Circuit's decision, and, while finding support for the conclusion that damages were not intended in most cases arising under the EHCA, reasoned that the issue of a damage remedy could not be resolved solely on the basis of section 1415(e)(3). *Anderson, supra*, at 1209. Moreover, even in situations to which *Stemple* applies, the Seventh Circuit found it likely that Congress, though generally requiring a child to remain in his current

placement, would have intended that parents take action in exceptional circumstances to provide the necessary services for their children without awaiting the outcome of lengthy administrative and judicial proceedings. *Id.* at 1213.

The *Anderson* court identified "at least two exceptional circumstances" in which parents should be compensated for the costs of obtaining services that the school district was required to provide. The first circumstance exists when the child's physical health would have been endangered had the parents not made alternative arrangements to those offered by the school system. *See Tatro v. Texas, supra.* The Seventh Circuit reasoned that Congress, which so explicitly expressed its concern for the needs and rights of handicapped children, could not have intended a child to remain in a placement in which there was a serious risk of injury to that child's physical health. Thus, when a court subsequently determines that the services in dispute were necessary to protect the physical health of the child and also were services that should have been provided by the school district, the district court has the statutory authority to recompense parents for the costs of those services the school district failed to provide. *Anderson, supra*, at 1213–14.

The *Anderson* court concluded that a second exceptional circumstance would exist when a school district acts in bad faith by failing to comply with the procedural provisions of 20 U.S.C. § 1415 in an egregious fashion:

> These provisions were Congress's way of assuring appropriate programming for handicapped children . . . . In the event of disagreement, Congress intended that parents could present a meaningful challenge to the school district's program and receive fair and impartial hearings. In essence, parents were to rely on compliance with the statute through two levels of administrative hearings before they could seek judicial relief. Congress could not have intended however, that parents would keep their child in an inappropriate situation in a case in which the school

district was acting in bad faith. In those circumstances, most parents could and likely would arrange unilaterally for the appropriate services.

*Id.* at 1214.

This Court is in substantial agreement with the reasoning and decision of the Seventh Circuit Court of Appeals in *Anderson v. Thompson.* Plaintiffs' arguments here are similar to those advanced by plaintiffs in *Anderson.* Plaintiffs argue that the language of section 1415(e)(2), bestowing upon aggrieved parties the right "to bring a civil action" and providing district courts with the power to "grant such relief as the court determines is appropriate," together with the legislative history stating that "the court ... shall grant all appropriate relief," S.Rep.No.94–455, *supra,* at 50, U.S.Code Cong. & Admin.News, p. 1503, entitles them to damages for alleged violations of the EHCA. They point to the absence of any express indication that Congress intended to limit the remedies traditionally available to the court in a civil action, and argue that when Congress wishes to limit a court's remedial powers by statute, it has done so explicitly. *See Anderson, supra,* at 1210.[5]

The congressional direction that the court grant such relief as it determines is appropriate standing alone, however, gives little indication of congressional intent to provide a damage remedy under the EHCA. The term "appropriate" is clearly one imbued with the concept of relativity, and appropriate relief can consist only of such relief

that, in the overall statutory scheme of the Act, is consistent with congressional intent as expressed in the legislative history and furthers the objectives of the legislation. Thus, where courts have construed "appropriate" relief expansively, as plaintiffs suggest here, they have not relied solely on the statutory language but have also considered underlying congressional intent. *See, e.g., International Brotherhood of Boilermakers v. Braswell,* 388 F.2d 193, 200 (5th Cir.), *cert. denied,* 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 854 (1968); *Simmons v. Avisco,* 350 F.2d 1012, 1019 (4th Cir. 1965); *International Brotherhood of Boilermakers v. Rafferty,* 348 F.2d 307, 315 (9th Cir. 1965) (construing section 102 of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 412, authorizing "such relief ... as may be appropriate").

Having considered the statutory language, the legislative history, and the objectives Congress sought to achieve in enacting the EHCA, this Court is of the opinion that damages are not within the scope of relief authorized by 20 U.S.C. § 1415(e)(2) absent exceptional circumstances. In those circumstances, parents' costs of obtaining services the school district was required to provide under the Act are the only appropriate damages recoverable. When a school district in good faith attempts to provide a free appropriate public education to a handicapped child, but the child's parents, dissatisfied with the dis-

---

5. Plaintiffs rely principally upon *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), and its progeny for the proposition that unless Congress clearly and convincingly expresses an intention to limit available remedies under a statute, the Court should presume that the panoply of traditional common law remedies is available to it. For the reasons discussed below in connection with plaintiffs' Rehabilitation Act claim, however, the Court believes that the degree of scrutiny it must employ in considering congressional intent to provide or deny a particular remedy transcends this relatively simplistic standard. Refer to Section II.D. *infra.* Only a cave dweller would fail to realize that there has been a remarkable change of attitude by the Supreme Court in the last fifteen years regarding the contours of statutory construction. *See Rogers v. Frito-Lay, Inc.,*

611 F.2d 1074, 1088 (5th Cir.) *cert. denied,* 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980) (Goldberg, J., dissenting). Judicial interpretation of a statute is not an occasion for the Court to exercise its own notions as to what Congress ought to have done, but rather an opportunity to give effect to that which Congress did in fact intend to do. *Id.* The task requires an enlightened judicial eye, giving full attention to underlying congressional purpose, the very heart of statutory analysis. *Davis v. United Air Lines, Inc.,* 662 F.2d 120, 123 (2d Cir. 1981). There may well be situations in which the *Bell v. Hood* presumption, as espoused by plaintiffs, retains vitality. This Court will not lightly presume congressional intent, however, without first undertaking a careful examination of the particular statute involved.

trict's efforts, unilaterally arrange for alternative services or placement, requiring that the district recompense the parents for the costs thereby incurred whenever a court subsequently determines that the defendants' efforts fell short of the statutory mark will not promote the purposes of the Act. *See* 20 U.S.C. § 1415(e)(3). Indeed, counterproductive results might well obtain. *See Anderson, supra*, at 1213; *Ezratty v. Puerto Rico, supra*, at 777; *Tatro v. Texas, supra*, at 978; *Loughran v. Flanders, supra*, at 115. Doubtless, however, there are situations, such as those identified in *Anderson v. Thompson*, in which Congress would have intended that parents be recompensed for the costs of services the school district should have provided but did not— unique factual occurrences where the provision of this limited damage remedy is altogether appropriate to ensure that recipients of federal moneys under the EHCA meet their obligation to provide handicapped children at no cost to parents or guardians a "free appropriate public education." *Tatro v. Texas, supra*, at 978; *Monahan v. Nebraska* (D.Neb.), *supra*, at 1094.[6]

■ After a careful review of the record developed to date in this action, this Court is unable to conclude that no genuine issue of material fact exists with respect to (1) whether the unilateral arrangements for services made by plaintiffs were necessary to protect the physical health of Gordon M. and also were services that should have been provided by AISD, and (2) whether defendants acted in bad faith in their alleged failure to fulfill their obligations to plaintiffs under the EHCA during the time period relevant to plaintiffs' damage claim. Should plaintiffs ultimately prevail on ei-

ther issue, they may be entitled to a limited monetary recovery.[7] Hence, defendants' motion to dismiss or for summary judgment on plaintiffs' claim for damages under the EHCA must be denied.

### D. The Question of Damages: The Implications of Section 504 of the Rehabilitation Act

Plaintiffs also assert a cause of action for money damages under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. That section provides:

> No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .

Congress passed the Rehabilitation Act for the express purpose of promoting and expanding opportunities in the public and private sectors for handicapped individuals. 29 U.S.C. § 701(8). *See Prewitt v. United States Postal Service*, 662 F.2d 292, 301 (5th Cir. 1981). Section 504 of the Act establishes the principle that recipients of federal funds cannot discriminate against the handicapped.

Unlike the EHCA, Congress did not expressly create a cause of action in favor of handicapped individuals under 29 U.S.C. § 794 authorizing the courts to grant relief for violations of its terms. Thus, in considering plaintiffs' claim under the Rehabilitation Act, three analytically distinguishable issues are present. The first issue is whether section 504 confers any substantive

---

**6.** This Court does not understand the Seventh Circuit to have held in *Anderson* that the exceptional circumstances under which reimbursement is authorized are limited to the two situations identified in that opinion. Nor does this Court so hold here. The Court holds only that, in light of the limited damage remedy authorized under the EHCA, the evidentiary record in this case will sustain plaintiffs' EHCA claim against a motion for summary judgment.

**7.** As *Anderson* indicates, plaintiffs can recover only for the costs of services which AISD was

obligated to provide under the Act but did not. Thus, plaintiffs bear the burden of establishing that the unilateral arrangements made in connection with the education of Gordon M. were appropriate to his special education and related service needs. *See Bales v. Clarke*, 523 F.Supp. 1366, 1370 (S.D.N.Y.1981); *Foster v. District of Columbia Board of Education, supra*, at 1146. The plaintiffs' duty to mitigate damages may further inhibit their entitlement to monetary relief. *See Tatro v. Texas, supra*, at 978.

rights on handicapped individuals. *See Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). If so, the second issue presented is whether an implied cause of action exists to enforce the rights conferred on these individuals. Resolution of this issue requires the application of the four-prong factor analysis first articulated by the Supreme Court in *Cort v. Ash, supra.* Finally, if an implied cause of action exists, the issue of available remedies must be decided. *Lieberman v. University of Chicago*, 660 F.2d 1185, 1192 (7th Cir. 1981) (Swygert, J., dissenting).

Little doubt exists as to the answers to the first two issues. Every federal court of appeals to consider the matter has ruled that an implied cause of action exists to enforce rights created under 29 U.S.C. § 794. *See, e.g., Camenisch v. University of Texas*, 616 F.2d 127, 131 (5th Cir. 1980), *vacated on other grounds*, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *NAACP v. The Medical Center, Inc.*, 599 F.2d 1247 (3d Cir. 1979); *Davis v. Southeastern Community College*, 574 F.2d 1158 (4th Cir. 1978); *rev'd on other grounds*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); *United Handicapped Federation v. Andre*, 558 F.2d 413 (8th Cir. 1977); *Kampmeier v. Nyquist*, 553 F.2d 296 (2d Cir. 1977); *Lloyd v. Regional Transportation Authority*, 548 F.2d 1277 (7th Cir. 1977). *See also Campbell v. Kruse*, 434 U.S. 808, 98 S.Ct. 38, 54 L.Ed.2d 65 (1977). Indeed, the legislative history to section 504 contains explicit indication of congressional intent to create such a private right of action. S.Rep.No.93–1297, 93d Cong., 2d Sess. 39–40, *reprinted in* [1974] U.S.Code Cong. & Ad.News 6373, 6391. *See Camenisch, supra*, at 131 & n.6.

No circuit decision has addressed the issue whether section 504 creates a private right of action in suits for damages, although the Fifth Circuit in *Camenisch, supra*, at 132 n.10, expressly reserved judgment on the question. Lower courts that have considered the question are in hopeless disarray. *Compare Hutchings v. Erie City and County Library Board of Directors*, 516 F.Supp. 1265 (W.D.Pa.1981); *Patton v. Dumpson*, 498 F.Supp. 933 (S.D.N.Y.1980); and *Poole v. South Plainfield Board of Education*, 490 F.Supp. 948 (D.N.J.1980) *with Miener v. Missouri, supra*; and *Boxall v. Sequoia High School District, supra.* Judicial disharmony is understandable; determining whether a damage remedy exists for an implied cause of action is indeed a "delphic task." *Lieberman v. University of Chicago, supra*, at 1193 (Swygert, J., dissenting). Initially, then, this Court must seek a principled way of resolving the issue.

Plaintiffs argue that the issue is governed by *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). In *Bell* the Supreme Court reasoned that

> When federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief. And it is also well settled that where legal rights have been invaded and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.

*Id.* at 685, 66 S.Ct. at 777. Essentially, plaintiffs argue that federal courts have the role of providing broad and flexible remedies for violations of federal statutory and constitutional rights, and that judicial power is plenary absent convincing legislative intent to the contrary. *See Lieberman v. University of Chicago, supra*, at 1193 (Swygert, J., dissenting).

Defendants urge that *Cort v. Ash, supra*, provides the proper analytical framework in this case. Further, they argue that inherent limitations on Congress's spending power, recognized by the Supreme Court in *Pennhurst State School & Hospital v. Halderman, supra*, must be observed in construing implied rights and remedies in the context of funding legislation. *See Lieberman v. University of Chicago, supra*, at 1187.[8]

---

**8.** The as yet uncertain reach of *Pennhurst* clouds the question of available remedies under both the EHCA and the Rehabilitation Act. In *Pennhurst* the Supreme Court delineated·inher-

*Bell v. Hood* and its progeny cannot be lightly swept aside. However, the Court believes that plaintiffs misconceive the nature of this case law in asserting that the issue of available remedies for implied causes of action is almost exclusively within the prerogative of the judiciary. The retreat from this position begins almost at once with the recognition that Congress, should it choose to do so, may limit the availability of judicial remedies in such cases; for if otherwise available remedies may be precluded by convincing legislative intent to the contrary, then surely the question of an implied remedy is foremost a legislative, and not judicial concern.

Ultimately, plaintiffs assert nothing more than a principle of statutory construction: where Congress by statute confers upon individuals substantive rights giving rise to an implied cause of action but does not clearly limit the remedies available under that action, the courts should presume that the full panoply of traditional remedies is intended. That principle seems unavoidably suspect in view of recent Supreme Court decisions considering the implication of private remedies and the element of congressional intent. *See Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). Refer to note 5 *supra.* Certainly, "the existence of a statutory right implies the existence of all necessary and appropriate remedies." *Sullivan v. Little Hunting*

*Park, Inc.,* 396 U.S. 229, 239, 90 S.Ct. 400, 405, 24 L.Ed.2d 386 (1969). The issue of an implied remedy, however, is a matter of statutory construction, *see TAMA, supra,* 444 U.S. at 15, 100 S.Ct. at 245, and the Court cannot arrive at a principled decision as to the contours of appropriate relief without careful consideration of the statute, its legislative history, and the objectives Congress sought to achieve through its enactment. Even if the legislative history of a statute is silent with respect to available remedies, congressional intent may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment. *Id.* at 18, 100 S.Ct. at 246. The Court should not imply a remedy inconsistent with the objectives underlying a congressional enactment merely because the legislative history of the Act does not convincingly reflect congressional intent to preclude the remedy.

■ Consideration of these factors leads the Court to believe that Congress, although intending a judicial remedy to enforce rights conferred by 29 U.S.C. § 794, intended generally to provide for enforcement of those rights only through injunctive and declaratory relief. To be sure, the legislative history of the Rehabilitation Act of 1973 is entirely silent on the question of available remedies for an implied cause of action under section 504. Yet, limited legislative commentary on the scope of remedies available under the Rehabilitation Act does exist. In 1979, the Senate committee on Labor and Human Resources,[9] in reporting

ent limitations on the power of Congress to legislate under its spending power. The Court held that when Congress seeks to impose obligations upon states to spend state money to fund certain rights as a condition of receiving federal moneys under funding legislation, the condition to receipt of funding must be explicit and unambiguous. 451 U.S. at 16, 101 S.Ct. at 1539, 67 L.Ed.2d at 707. While the Court in *Pennhurst* was not faced with implying a damage remedy under a funding statute, but rather with whether a provision in a funding statute could be given effect as a condition of receipt of federal funds, it may be that the broader principles of the decision apply equally to the question of remedies. Thus, private enforcement of funding legislation through a judicial

remedy that superimposes financial obligations over those upon which the receipt of federal moneys is expressly conditioned may be unavailable unless the remedy is also expressly authorized. *See Lieberman v. University of Chicago, supra.* Even were this Court to presume that Congress intended the full panoply of traditional remedies to be available under the EHCA and section 504, as plaintiffs urge it to do, the Court believes that *Pennhurst* would limit its ability to give effect to such congressional intention. The Court need not reach that question today, however.

**9.** The 1979 Senate committee succeeded the committee which reported the Rehabilitation Act of 1973, and was comprised of 11 of the 16 members of the 1973 committee. *See Rogers*

a bill which would amend Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., to add the handicapped to the groups within its protections, stated:

It is, and has always been the Committee's intent that any handicapped individual aggrieved by a violation of title V has the right under existing law to proceed privately in federal court to enforce the rights and remedies afforded under title V of the Rehabilitation Act of 1973, as amended, and to receive back pay and attorney's fees if successful.

S.Rep.No.96–316, 96th Cong., 1st Sess. 12–13 (1979).

Although the Court cannot accord these remarks the weight of contemporary legislative history to the 1973 Act, it would be remiss if it ignored these "authoritative expressions" concerning the scope and purpose of section 504 and the enforcement scheme contemplated therein. *Cannon v. University of Chicago*, 441 U.S. 677, 686 n.7, 99 S.Ct. 1946, 1951, 60 L.Ed.2d 560 (1979). It is a well-established principle that the post-enactment treatment of a statute by Congress is cogent evidence of the intent of Congress at the time of its passage. This principle derives from the recognition that Congress is a credible interpreter of its own actions and that courts should pay heed to its interpretations. *See, e.g., Chrysler Corp. v. Brown*, 441 U.S. 281, 299–300 & n.29, 99 S.Ct. 1705, 1716, 60 L.Ed.2d 208 (1979); *Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 380–81, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969); *Rogers v. Frito-Lay, Inc., supra*, at 1101 (Goldberg, J., dissenting).

Legislative statements thus indicate that Congress envisioned the availability of a private action for equitable relief under Title V of the Rehabilitation Act analogous to that provided private litigants under Title VII of the Civil Rights Act of 1964. The commentary, albeit of limited weight, does not evidence congressional intent to imply a judicial remedy under section 504 encompassing a panoply of traditional common law remedies; indeed, such a result appears contra-indicated.[10]

The Court gleans more significant support for the conclusion that Congress did not intend to create a general damage remedy for the enforcement of section 504 from the overall legislative scheme of the statute. *See TAMA, supra*, 444 U.S. at 22, 100 S.Ct. at 248. Congress expressly modeled the discrimination prohibition contained in section 504 after the prohibitory language contained in Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., and Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 et seq. *See* S.Rep.No.93–1297, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Ad.News 6374, 6390–91. *See also Brown v. Sibley*, 650 F.2d 760, 767–68 (5th Cir. 1981). As with Title VI and Title IX, an elaborate administrative structure for governmental enforcement of section 504 exists. *Camenisch v. University of Texas, supra*, at 132; *Boxall v. Sequoia Union High School District, supra*, at 1112.

Clearly, the administrative enforcement scheme is of limited utility to individual complainants. The ultimate remedy afforded by the administrative enforcement process is a complete cut-off of federal funds to a non-complying recipient. While the threat of funding termination might provide an effective incentive to compliance with section 504, actual termination of funds would virtually guarantee that no further services accrue to the aggrieved

---

v. *Frito-Lay, Inc., supra*, at 1101 n.32 (Goldberg, J., dissenting).

**10.** Section 504 is one of the five sections contained in Title V of the Rehabilitation Act of 1973, prior to the 1978 amendments. *See* 29 U.S.C. §§ 790–794. Sections 501 and 503 are expressly concerned with employment opportunities for handicapped individuals within federal and state agencies and under federal contracts. The general nondiscriminatory provisions of section 504, of course, are not limited to employment situations. The committee statement concerning the scope of available remedies in private actions to enforce rights under Title V of the Act, although apparently concerned with employment discrimination, nevertheless does not manifest an intent to create a general damage remedy under Title V in any discrimination context.

individual. *Camenisch v. University of Texas, supra,* at 135. A private right of action for injunctive and declaratory relief under section 504, however, provides an effective means of private enforcement while ensuring that the program or services in question remain within the statutory framework.

To be sure, implication of a damages remedy would create an auxiliary means of enforcing section 504 rights. It seems incongruous, however, that Congress would have contemplated such a remedy while at the same time providing for the termination of federal funding. *See Guardians Association of New York City v. Civil Service Commission,* 633 F.2d 232, 261–62 (2d Cir. 1980) (Title VI case). Moreover, the Court does not perceive a damage remedy as entirely consistent with the legislative purpose underlying the Rehabilitation Act. As previously noted, Congress enacted the Rehabilitation Act to promote and expand opportunities in the public and private sectors for handicapped individuals. *See* 29 U.S.C. § 701(8). Congress sought to achieve this purpose in section 504 of the Act by conditioning the receipt of federal funds on the promise of equal opportunities in programs or services so funded. However, the implication of a damage remedy would portend a potentially massive financial liability upon recipients of federal funds, possibly in excess of the amount of funds received. This exposure could serve as a significant disincentive to the solicitation or acceptance of federal financial assistance, and hence a significant deterrent to the promotion and expansion of opportunities for handicapped individuals through funding legislation. *See Guardians Association, supra* (no compensatory relief under Title VI); *Lieberman v. University of Chicago, supra,* at

1188 (holding that a damage remedy does not exist for the implied cause of action under Title IX); *but see Guardians Association, supra,* at 272 (Coffrin, J., concurring) (compensatory relief available under Title VI).[11]

In sum, although the provision of a damage remedy would provide a means of enforcing rights under section 504, counterveiling considerations convince the Court that the implication of a damage remedy under that section would frustrate the underlying purpose of the Rehabilitation Act's legislative scheme. *Cannon v. University of Chicago, supra,* 441 U.S. at 703, 99 S.Ct. at 1960; *Guardians Association, supra,* at 262. An implied private cause of action for equitable relief under section 504, given near universal recognition by the courts, coupled with the provision for an award of attorneys fees contained in 29 U.S.C. § 794a, provide plaintiffs with an effective means of enforcing the federal statutory rights in question. Therefore, the Court declines to imply a private damage remedy under section 504 of the Rehabilitation Act.

**E. The Remedial Framework of 42 U.S.C. § 1983**

Plaintiffs, relying upon the Supreme Court's recent decision in *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), assert that they are entitled to maintain an action for damages under 42 U.S.C. § 1983 for alleged violations of the EHCA and section 504 of the Rehabilitation Act. In *Thiboutot* the Supreme Court considered whether section 1983 would encompass a claim under the Social Security Act, specifically 42 U.S.C. § 602(a)(7). The Social Security Act is similar to the EHCA, and, to a limited extent section 504,[12] in

11. An additional consideration exists in this case. Federal regulations promulgated under section 504 mandate the provision of a free appropriate public education coextensive with the requirements of the EHCA. 34 C.F.R. § 104.1 *et seq.* (1980); 45 C.F.R. § 84.1 *et seq.* (1980). *See Foster v. District of Columbia Board of Education, supra,* at 1144; *Association for Retarded Citizens v. Frazier,* 517 F.Supp. 105, 120 (D.Colo.1981). In the context

of the present action, at least, the forceful policy considerations that militate against a general damage remedy under the EHCA are relevant to the question of damages under section 504. Refer to Section II.C. *supra.*

12. Because federal regulations promulgated under section 504 with respect to preschool, elementary and secondary education obligate recipients of federal funds to provide handicapped children with a free appropriate public

that it contains an elaborate internal remedial scheme. It differs from the EHCA in that an express private right of action is not provided. Section 1983, the Court held, provided a cause of action for plaintiffs who alleged that they were harmed by violations of the Social Security Act and were otherwise without a remedy.

*Thiboutot* holds without apparent reservation that a cause of action under section 1983 exists to enforce all federally created rights whether they be of constitutional or statutory origin. Subsequent Supreme Court decisions, however, have been quick to impose limitations on the unqualified pronouncements in *Thiboutot.* In *Pennhurst State School & Hospital, supra,* 451 U.S. at 27, 101 S.Ct. at 1545, 67 L.Ed.2d at 714, the Court noted that, despite *Thiboutot,* section 1983 is not applicable in situations where the governing statute provides an exclusive remedy for violations. More recently, in *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), the Court indicated that whether a section 1983 action exists to enforce statutory rights is essentially a question of legislative intent:

> When the remedial devices provided in a particular act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983.

101 S.Ct. at 2626, 69 L.Ed.2d at 450. *See also Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 672, 99 S.Ct. 1905, 1944, 60 L.Ed.2d 508 (1979) (White, J., concurring).

These decisions reaffirm and rely upon the analysis in pre-*Thiboutot* cases addressing the issue whether a statutory remedy was intended to be exclusive. *See Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *Brown v. GSA,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Adickes v. Kress & Co.,* 398 U.S.

144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In *Adickes* the Court discussed whether a section 1983 action was possible in a case in which the governing statute, while providing a judicial remedy, did not provide for damages. The Court concluded that it was "very doubtful" that a section 1983 action could be brought because the governing statute, the Public Accommodations Act, did not provide for damages and was intended as the exclusive means of enforcing statutory rights. 398 U.S. at 150–51 & n.5, 90 S.Ct. at 1604–1605.

In *Brown v. GSA,* the Court was called upon to determine whether section 717 of Title VII, which provided an express right of action for federal employees aggrieved by discriminatory employment practices, was exclusive of remedies for violations of the same rights provided under other substantive statutes. Examining the legislative history of section 717 and its carefully designed administrative and judicial scheme, the Court concluded that Congress had intended to fashion an exclusive, preemptive remedy under the section. 425 U.S. at 829, 96 S.Ct. at 1966.

Finally, in *Novotny,* the Court relied upon *Brown v. GSA* in holding that 42 U.S.C. § 1985(c) could not be invoked to redress violations of Title VII. The Court observed that Title VII provided a detailed administrative and judicial process geared toward nonjudicial resolution of grievances. The statute also prescribed certain time limits and specified a limited form of relief. The Court reasoned that Title VII's remedial scheme would be impaired and congressional intent thwarted if violations of the statute could be asserted through section 1985. Thus, because the limited remedies prescribed under Title VII were inconsistent with the broader provisions of section 1985, the Court concluded that the rights created by Title VII could not be asserted within the remedial framework of 42 U.S.C. § 1985(c). 442 U.S. at 377, 99 S.Ct. at 2351.

education and mandate procedural safeguards analogous, if not identical, to those found in section 615 of the EHCA, the remedial scheme

envisioned in this case under section 504 is quite elaborate. *See* 34 C.F.R. § 104.36 (1980).

1. *EHCA.* In *Brown v. GSA* the Supreme Court noted that in a variety of contexts a precisely drawn, detailed statute will preempt more general remedies. 425 U.S. at 834, 96 S.Ct. at 1968. That general recognition underlies the Supreme Court's pronouncements in both *Pennhurst* and *Middlesex County.* In light of relevant Supreme Court authority, this Court is of the opinion that the remedial scheme of 20 U.S.C. § 1415 is sufficiently comprehensive to infer legislative intent to provide an exclusive remedy for violations of the EHCA. Thus, the Court holds that the rights created by the EHCA may not be asserted into the broader remedial framework of 42 U.S.C. § 1983. *Accord, Anderson v. Thompson, supra,* at 1214–17.

The EHCA, like the statutes at issue in *Brown* and *Novotny,* contains an elaborate administrative and judicial enforcement system. The two-tier administrative process, of course, is a central feature of the statutory scheme. In *Novotny* the Supreme Court viewed the complete bypass of the Title VII administrative process as a crucial reason for denying relief under 42 U.S.C. § 1985. *Novotny, supra,* 442 U.S. at 375, 99 S.Ct. at 2350. Requiring the exhaustion of the EHCA's administrative remedies as a prerequisite to a section 1983 action, of course, would minimize a similar thwarting of congressional intent here. *Tatro v. Texas, supra,* at 984. *See, Patsy v. Florida International University,* 634 F.2d 900 (5th Cir. 1981) (en banc). This is not sufficient to persuade the Court however, that Congress did not intend the judicial remedy provided in section 1415(e)(3) to be exclusive.

The most compelling reason for a finding of exclusivity is the inconsistency between the relief provided under section 1415(e)(3) and that available under 42 U.S.C. § 1983. *Anderson v. Thompson, supra,* at 1216. A traditional damage remedy is unavailable under the EHCA; section 1415(e)(3) authorizes only a limited measure of damages. Refer to Section II.C., *supra.* Section 1983 is not similarly limited in scope. Both compensatory and punitive damages may be recovered. *Carey v. Piphus,* 435 U.S. 247,

98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *McCulloch v. Glasgow,* 620 F.2d 47 (5th Cir. 1980). The right to trial by jury is preserved for actions at law under 42 U.S.C. § 1983. *Burt v. Abel,* 585 F.2d 613, 615 (4th Cir. 1978); *cf. Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 214 (1974) (seventh amendment requires jury trial if statute creates legal rights and remedies enforceable in action for damages). The "civil action" authorized at 20 U.S.C. § 1415(e)(3) provides only for *de novo* review by a court, and anticipates that the decision as to "appropriate relief" will be made in large part on the basis of the administrative record developed below. *See, e.g., Gladys J. v. Pearland ISD, supra.*

In sum, the remedial provisions of 20 U.S.C. § 1415 cannot be given "unimpaired effectiveness" if rights created by the EHCA can be asserted within the inconsistent remedial framework of 42 U.S.C. § 1983. *See Novotny, supra,* 442 U.S. at 378, 99 S.Ct. at 2352; *Adickes v. Kress supra,* 398 U.S. at 150–51 n.5, 90 S.Ct. at 1604–1605. The availability of a private right of action under the EHCA, the detailed statutory administrative and judicial scheme, and the absence of a traditional damage remedy under the Act compel a conclusion that the judicial remedy provided there was intended to be exclusive of a section 1983 action. *Anderson v. Thompson, supra,* at 1217.

2. *Section 504 of the Rehabilitation Act.* Where Congress has spoken explicitly or has provided ample evidence of its intent through a comprehensive statutory enforcement scheme, the Supreme Court has experienced little difficulty in finding remedial exclusivity. Section 504, however, bears little resemblance to the statutes considered in *Adickes, Brown* and *Novotny,* and unlike the EHCA, does not expressly provide a remedy for a violation of its provisions. Nor, in providing for governmental enforcement of the statute, can Congress be said to have intended an exclusive remedy. *See Cannon v. University of Chicago, supra* (construing effect of analogous Title IX enforcement procedures). Indeed, section

504 more closely resembles the provision of the Social Security Act considered in *Maine v. Thiboutot* in that no express provision for its enforcement is made.

Section 504 is unlike the provision considered in *Thiboutot*, however, in that the courts have recognized an implied cause of action to enforce its terms. The Social Security Act affords no private right of action against a state. *Maine v. Thiboutot, supra*, 448 U.S. at 6, 100 S.Ct. at 2504 (citing *Edelman v. Jordan*, 415 U.S. 651, 673–74, 94 S.Ct. 1347, 1360–1361, 39 L.Ed.2d 662 (1974)). Moreover, this Court has discerned evidence of legislative intent to provide only for equitable relief under section 504, and has found the implication of a traditional damage remedy at cross-purposes with the objectives Congress sought to achieve through the enactment of the statute. Refer to Section II.D. *supra*.

In view of this, the Court does not believe that *Thiboutot* compels the result urged here by plaintiffs. The ultimate consideration in determining whether the deprivation of a right created by legislative enactment can be the basis for a cause of action under 42 U.S.C. § 1983 is congressional intent. *See Middlesex County Sewerage Authority, supra,* 453 U.S. at 19, 101 S.Ct. at 2626, 69 L.Ed.2d at 450. Section 1983 protections apply to all rights secured by federal statutes "unless there is a clear indication in a particular statute that its remedial provisions are exclusive or . . . *for* various other reasons a § 1983 action is inconsistent with congressional intent." *Chapman v. Houston Welfare Rights Org., supra*, 441 U.S. at 672, 99 S.Ct. at 1944 (White, J., concurring). Nothing in *Thiboutot* signals a retreat from this principle. *Pennhurst State School & Hospital, supra*, 451 U.S. at 27, 101 S.Ct. at 1545, 67 L.Ed.2d at 714; *id.* 451 U.S. at 50–51, 101 S.Ct. at 1556–1557, 67 L.Ed.2d at 728–29 (White, J., dissenting).

The dispositive issue here is the same one recognized by the Supreme Court in *Novotny*: whether, consistent with congressional intent, the rights created by section 504 can be asserted within the *remedial* framework of 42 U.S.C. § 1983. *Novotny,*

*supra*, 442 U.S. at 378, 99 S.Ct. at 2352. The Court has determined the remedy implied under section 504 to be limited to equitable relief. Section 1983 is not similarly limited in the scope of the relief it provides, and the Court has found that the supplemental damage remedy afforded by section 1983 would threaten to eviscerate the congressional objectives underlying section 504. Therefore, the Court holds that the rights created by section 504 of the Rehabilitation Act cannot be asserted within the remedial framework of 42 U.S.C. § 1983.

Accordingly, the Court will dismiss plaintiffs' claims for relief under . 42 U.S.C. § 1983 based upon alleged deprivation of rights secured by the EHCA and section 504 of the Rehabilitation Act. The dismissals do not affect plaintiffs' section 1983 actions for alleged constitutional infractions.

### III.

### PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff seek partial summary judgment on the liability issues involved in their EHCA, Rehabilitation Act, and fourteenth amendment claims. As briefly set forth above in Section II.B, plaintiffs' claims concern the acts or omissions of defendants in connection with the public education of Gordon M., acts which plaintiffs allege violated federally protected rights accruing to them under the various statutory and constitutional provisions.

With respect to plaintiffs' EHCA claim, the Court has little difficulty with the contention that the Act's requirement of a "free appropriate public education" encompasses an obligation on the part of the defendants to identify, evaluate and place all handicapped children within the jurisdiction of AISD. *See* 20 U.S.C. § 1414(a)(1)(A). Even accepting defendants' argument that the Act affirmatively requires only that school districts establish programs or procedures designed to facilitate the identification of handicapped children, it is intuitively clear that a handi-

capped child who is not identified and evaluated cannot be provided a "free appropriate public education" as defined in the Act. 20 U.S.C. § 1401(18).

It is also clear that Gordon M. was not identified by AISD as a handicapped child and an effort to provide a free appropriate public education to him made until April 1979. In order for the plaintiffs to establish a violation of the EHCA prior to that time, however, it is incumbent upon plaintiffs to establish that Gordon was in fact a handicapped child within the meaning of the Act at all times during which it is alleged that defendants' breach of their statutory duty occurred. Particularly, with respect to plaintiffs' claim for reimbursement of costs, it must be shown that Gordon was entitled to a free appropriate public education when the unilateral decision to withdraw him from AISD was made. There is evidence in the record from which it may be inferred that Gordon was a handicapped child as defined in the EHCA at all times material to this lawsuit, but this evidence falls short of the standard required to sustain a motion for summary judgment. *See* Fed.R.Civ.P. 56.

Assuming for present purposes that the failure to provide a free appropriate public education pursuant to the EHCA also constitutes a violation of section 504,[13] the record similarly fails to sustain a motion for summary judgment under the Rehabilitation Act of 1973. Genuine issues of material fact exist whether Gordon at all relevant times was a member of the protected class of "otherwise qualified handicapped individuals" entitled to bring suit under section 504. *See, e.g., Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). Plaintiffs' motion for summary judgment on their constitutional claims is also denied.[14]

Therefore, it is ORDERED, ADJUDGED and DECREED that plaintiffs' motion for partial summary judgment is DENIED; and further

ORDERED that plaintiffs' claims for relief under 42 U.S.C. § 1983 based upon alleged deprivations of rights secured by the EHCA and section 504 of the Rehabilitation Act of 1973 are DISMISSED; and

ORDERED that defendants' motion to dismiss or for summary judgment is

---

**13.** The federal regulations promulgated under section 504 clearly require the provision of a free appropriate public education consistent with that required under the EHCA. Refer to notes 11 & 12 *supra*. This Court in the past has assumed these regulations to be a valid exercise of agency rulemaking authority. *Gladys J. v. Pearland ISD, supra*, at 874. In light of *Southeastern Community College v. Davis*, 442 U.S. 397, 410–12, 99 S.Ct. 2361, 2369–2370, 60 L.Ed.2d 980 (1979), however, some question exists whether the affirmative action required by the regulations constitutes an unauthorized extension of the obligations imposed by the statute. The Fifth Circuit has consistently held in post-*Davis* decisions that section 504 requires recipients of federal funds to make reasonable accommodations in their programs and services to eliminate "surmountable barrier discrimination" against handicapped individuals. *See, e.g., Majors v. Housing Authority of the County of DeKalb, Georgia*, 652 F.2d 454, 457–58 (5th Cir. 1981); *Tatro v. State of Texas*, 625 F.2d 557, 564 (5th Cir. 1980); *Camenisch v. University of Texas, supra*, at 132–33. Whether the regulations at issue require more than this is unclear. *See Association for Retarded Citizens in Colorado v. Frazier, supra*, at 122–23 (upholding section 504 regulations).

**14.** Plaintiffs apparently contend that the right to a free appropriate public education secured to handicapped children by the EHCA is also constitutionally mandated by *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). The automatic equation of statutory and constitutional rights in this instance, however, is clearly unwarranted. First, no court has ever declared that handicapped persons constitute a suspect class for purposes of equal protection analysis, and the Fifth Circuit has expressly declined to do so. *Brown v. Sibley, supra*, at 766. Second, the right to education is not a fundamental constitutional right. *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Thus, class-based distinctions in the education of handicapped individuals may be justified if rationally related to a legitimate state objective. *Brown v. Sibley, supra*. Moreover, the constitutional guarantee of equal protection is not violated unless the action complained of was motivated by invidious discriminatory purpose. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977).

GRANTED in part, as it relates to plaintiffs' above-dismissed 42 U.S.C. § 1983 claims, and is in all other respects DENIED.